STATE EX REL. GARTON TOY COMPANY, Respondent, v. TOWN OF MOSEL and others, Appellants.

*September 12—October 4, 1966.*

For the appellants there was a brief by *Walter & Hopp* and *Alexander Hopp,* all of Sheboygan, and oral argument by *Alexander Hopp.*

For the respondent there was a brief by *Federer, Grote, Hesslink, Rohde & Neuses* and *Jacob F. Federer*

and *Robert L. Rohde,* all of Sheboygan, and oral argument by *Robert L. Rohde.*

BEILFUSS, J.   The issue is: Were the assessments of the Garton Toy Company property in the town of Mosel by the assessors as corrected by the board of review made on the basis permitted by the statutes.

Sec. 70.32, Stats., provides:

**"Real estate, how valued.** (1) Real property shall be valued by the assessor from actual view or from the best information that the assessor can practicably obtain, at the full value which could ordinarily be obtained therefor at private sale. . . ."

Sec. 70.34, Stats., provides:

**"Personalty.** All articles of personal property shall, as far as practicable, be valued by the assessor upon actual view at their true cash value; . . ."

The appellant, town of Mosel, contends that the circuit court should not have set aside the assessor's valuations of taxpayer's real and personal property as corrected by the board of review if there is substantial evidence in the record to support the correctness of the dollar amounts of those valuations.  It contends that there is substantial evidence to support the amounts of those valuations.  The taxpayer argues that the correctness of the dollar amounts of the valuations is irrelevant in this certiorari action because the circuit court set the assessments aside on the ground that they were not made on the basis permitted by the statute.

In *Madison Aerie No. 623 F. O. E. v. Madison* (1957), 275 Wis. 472, 474, 475, 82 N. W. (2d) 207, this court held that in certiorari proceedings circuit courts have no jurisdiction to disturb the findings of a board of review in the absence of bad faith if the evidence presented furnishes a substantial basis for that valuation, but that clear errors of law must be corrected by courts on certiorari.  Failure to make the assessment on the statu-

tory basis is such an error of law. In *Central Cheese Co. v. Marshfield* (1961), 13 Wis. (2d) 524, 534, 109 N. W. (2d) 75, we approved the following statement:

" 'It is first to be pointed out that it is no function of the trial court on certiorari to make an assessment of property, or to order an assessment to be entered on the assessment or tax roll at any fixed sum. The sole function of the trial court is to set aside the assessment if it finds upon the undisputed evidence before the board that it has not been fixed upon the statutory basis.' "

The above-quoted language is found in *State ex rel. Kenosha Office Bldg. Co. v. Herrmann* (1944), 245 Wis. 253, 14 N. W. (2d) 157, 14 N. W. (2d) 910. The opinion further states at pages 257, 258:

"The usual course in *certiorari* to review the action of a board of review has been for the trial court to determine whether the undisputed evidence submitted by the taxpayer was such as to show the assessment objected to was not based on sale value as fixed by the statute. If so the assessment has been set aside. Where the evidence so produced was controverted,—if in any reasonable view the evidence as a whole would support the assessment,—the assessment has been upheld. Also, if the record before the court showed that the assessor or the board excluded from consideration evidence entitled to consideration or if the assessor based his valuation on improper considerations or went upon a false assumption or theory in determining the amount, or gave to facts considered unwarranted effect or drew from them unwarranted conclusions the assessment has been set aside."

These cases clearly delineate the proper test to be used by the circuit court in certiorari proceedings such as this. That test goes to method of evaluation, not necessarily to amount.

This court has often announced the method and considerations that assessors must utilize in order to comply with the statutory requirements for the proper assessment of real estate. In *State ex rel. Evansville Mercantile Asso. v. Evansville* (1957), 1 Wis. (2d) 40, 82

N. W. (2d) 899, the court reiterated many of the principles to be applied in the review of tax assessments; it stated again that for tax purposes property must be assessed at its fair market value. In *State ex rel. I. B. M. Corp. v. Board of Review* (1939), 231 Wis. 303, 311, 312, 285 N. W. 784, this court explained some of the elements to be considered by assessors in determining the fair market value:

"This court has several times held that in determining market value of real estate for taxation purposes it is proper to consider such elements as cost, depreciation, replacement value, income, industrial conditions, location and occupancy, sales of like property, book value, amount of insurance carried, value asserted in a prospectus, and appraisals procured by owner. [Cases cited.]"

The court has announced that the assessor and board of review must consider all of these elements collectively. *State ex rel. Enterprise Realty Co. v. Swiderski* (1955), 269 Wis. 642, 645, 70 N. W. (2d) 34:

"Where the clear market value is *not* established by a sale or sales the assessor or the board of review should consider all the facts collectively which have a bearing upon such market value, in order to determine it."

What the court has done by these rules is to articulate the criteria by which courts can determine whether assessors or boards of review have made assessments on the statutory basis. With these rules in mind we now can examine the undisputed evidence with respect to the method used to evaluate the plaintiff's real estate.

It is undisputed that the real estate assessment was made solely on the basis of a reconstruction cost less depreciation figure arrived at by the assessors by the following method set forth in the town's brief:

"1. They made a physical visit throughout the Town.
"2. They compared recent 'arms-length' sales of property within the Town.

"3. On the basis of the sales analysis, they established a factor of 2.8, which they applied to Boechk's [sic] Manual tables, Exhibit 35 to establish reconstruction or replacement costs.

"4. The reconstruction cost and their combined judgment as to value then became the appraised value."

Boeckh's "Manual of Appraisals" is a commonly used appraisal guide which utilizes a mathematical formula to calculate reproduction costs. The manual is designed to give reproduction or replacement costs. It establishes a 1929 construction cost for similar buildings—a factor is determined based upon recent sales and the assessor then applies the factor to 1929 construction unit cost to obtain the estimated current cost of reproduction. This formula does not determine fair market value—it estimates reproduction costs. The assessors determined a factor of 2.8 from residential property sales in the town of Mosel and then applied this same factor to all property within the town, including the Garton Toy property.

The manual itself recognizes that reproduction costs may not always be the same as fair market value and suggests the use of the other two commonly used methods of appraisal—capitalization of income and sales of comparative properties for comparison in determining fair market value.

It is undisputed that there is no other manufacturing real estate in the township and that none of the sales used as a basis for the assessor's computation involved real estate comparable to the large manufacturing plant operated by the taxpayer. It is not disputed that the assessors and the board of review completely ignored the actual cost of the construction of the taxpayer's plant, although the plant was built only two years prior to the challenged assessment.

Perhaps there is no better synopsis of some of the undisputed facts which led to the setting aside of the assessment than part of the opinion of the circuit court:

"Here the assessors had available the actual construction costs of this building as well as the actual construction costs of all of the other manufacturing improvements. So did the board of review. The building and the other manufacturing improvements were completed as recently as two years prior to May 1, 1964, the date at which the assessors were to evaluate the property for the 1964 assessment. There is nothing in the record to cast doubt concerning the veracity of these actual costs nor is there anything in the record even tending to indicate that such construction costs were anything other than bona fide costs, existing in the area at the time, and arrived at through arm's length negotiating. In fact the assessors and the board accepted and adopted all of the actual costs of the following manufacturing improvements, the water tower, $29,536.61, railroad siding, $24,164.00, and other land improvements, $50,292.08, and then depreciated these costs by six per cent in arriving at the assessment of those items. But they ignored the evidence as to the actual cost of the building and in its stead they used Boechk's [sic] Manual and a 'factor' to determine the construction costs of the building. No factor, theory or rule of thumb can substitute for very recent undisputed, actual market cost figures. In any event such actual construction costs cannot be wholly ignored when applying a factor or a theory, as was done here. A cardinal duty of an assessor is to 'obtain data on present day building costs in his locality' where he is assessing. (Assessor's Manual, exhibit 40.)

"It is undisputed that the building cost $1,617,462.63 to construct, yet the assessors assessed the building at $1,867,914.00 and this was their value after they first deducted six per cent depreciation from their 'reconstruction cost.' This is a difference of $250,452.00 over actual costs without allowing any depreciation on the cost. The only testimony in the record regarding rise in construction cost since the plant was constructed was that of Mr. Quasius, who testified that to duplicate the plant today would approximate ten per cent more. Adding such ten per cent to the actual cost of the building, to arrive at duplication cost today, would give a figure less than the assessor's valuation even with their depreciation

deducted. We are not suggesting that this latter way is a proper way of arriving at an assessment of the building but is stated to emphasize the error of the assessors and the board in valuing the manufacturing improvements. It is clear that the assessors and board's assessment of the manufacturing improvements (and thereby the real estate) is not an assessment at sale or market value for, as the Assessor's Manual (exhibit 40) states at page 156, 'no buyer would pay more for a plant than he could reproduce one for of the same capacity and efficiency.'

"The evidence clearly demonstrates that in this case the reconstruction cost less depreciation, as calculated by the appraisers, did not result in determining sale or market value, yet no effort was made by the assessors to check their reconstruction less depreciation values with the other two well recognized approaches used in appraising, the market data approach and the income approach. Nor did they consider any of the other elements referred to in the above cited cases, proper to consider to determine sale or market value. In determining the important matter of depreciation they used only the physical, or straight line depreciation and gave no consideration whatever to economic depreciation such as plant location, public fire and police protection, public transportation, labor market and so forth, nor did they determine whether there was or was not any functional obsolescence. All of such failures resulted in an erroneous, non-sale value assessment, and the board of review disregarded all undisputed evidence which established that the assessor's assessments were not based on sale value as required by the statute."

Thus, upon the undisputed facts, the assessment in this case was clearly not made upon the statutory basis for at least the following reasons: (1) Fair market value was not established by a recent sale, yet the board of review did not consider all the facts collectively which have a bearing on market price. (2) The assessors and board considered reconstruction costs less depreciation as the only element in arriving at market value. (3) The board excluded from consideration evidence entitled to

consideration, such as appraisals submitted by the tax-payer and evidence of methods of valuation other than that used by the assessor. (4) From the fact that the Wisconsin taxation department's assessment figure for the taxpayer's real estate approximated that of the assessors, the board of review drew the unwarranted conclusion that the assessors had proceeded according to the methods permissible under the statute.

The circuit court correctly set aside the real estate assessment on the ground that the assessment was not made on the statutory basis.

The assessors made assessments on three classifications of personal property for the Garton Toy Company:

| | |
|---|---:|
| Manufacturer's Stock "A" | $799,890 |
| Machinery, Tools, and Patterns "B" | 55,580 |
| Furniture and Fixtures "B" | 19,930 |

The taxpayer made no objection to the assessment of the latter two classifications, so the only concern of the court upon this appeal is whether the manufacturer's stock or inventory was assessed on the statutory basis.

Sec. 70.34, Stats., in part, provides:

"**Personalty.** All articles of personal property shall, as far as practicable, be valued by the assessor upon actual view at their true cash value; . . ."

Several undisputed facts formed the basis for the circuit court's vacation of the inventory assessment on the ground that it was not made on the statutory basis.

It is undisputed that the assessors based their assess-ment of the Manufacturer's Stock "A" solely on the book-value figure for the taxpayer's raw materials, work in process, and finished goods as reflected in the taxpayer's department of taxation Form 10. The assessment was not in any way based upon an "actual view" of the in-ventory, as explicitly required by sec. 70.34, Stats., and by the Wisconsin Department of Taxation's Assessor's

Manual (1952), 66, 86. The assessors and the board of review completely ignored the undisputed evidence presented by the taxpayer to the effect that certain inventories were "distressed" merchandise whose cash value is below book value and that some of the goods in process has no market value at all. While we cannot agree with the taxpayer that some work in process has no market value, the assessors and the board of review disregarded the undisputed evidence of distressed merchandise which supports the taxpayer's contention that cost or book value do not reflect fair market value. The circuit court articulated the undisputed evidence upon which it concluded that the inventory assessment was not made on the statutory basis:

"Form 10 is exhibit 21 (a) and is a form required to be submitted by corporations to the state department of taxation and it is specifically stated on the form that 'when engaged in manufacturing the inventory figures should reflect the combined book values of raw materials, goods in process and finished goods.' Thus both exhibits 3 and 10 reflect only book values of the manufacturer's stock and the assessors made no effort whatever to ascertain whether such book values were also the true cash or sale values. Mr. Garton's and Mr. Augustine's undisputed testimony establish that such values are the book values and are not the cash or sale values. The testimony of these two witnesses clearly establishes that those values include unmarketable and distressed merchandise. Mr. Garton estimated that approximately 40 per cent of the value constituted distressed merchandise at the plant on May 1, 1964, which was 'not marketable at the full market price.' He further testified that 'taking all factors into consideration it is our experience that we have a loss ratio of 40 per cent of our saleable goods.' Obviously the assessors in valuing the manufacturer's stock did not assess it at 'true cash value' which has been interpreted by the court to mean a value at which a willing buyer and a willing seller would deal. State ex rel. Baker Mfg. Co., vs. Evansville, supra. The board of review in approving the assessment of the manufacturer's stock disregarded the undisputed evidence."

In view of the fact that the assessment was not at all based upon an actual view of the inventory required by statute, and for the other reasons set forth by the trial court, it is evident that the assessment of the manufacturer's stock was not made upon the statutory basis. This is not to say that the assessors and the board of review must adjust the assessment to conform completely with evidence produced by the taxpayer concerning the value of "distressed" merchandise and goods in process. But they must at least consider it if they are to accurately assess the inventory at its "true cash value" on the first of May.

The court does not determine the values in the reassessment that will follow the remand—that is the function of the assessor, corrected, if necessary, by the board of review. If there are no comparable fair market value sales or actual sales, the assessor and the board of review must consider and evaluate testimony or facts of other methods of evaluation and other testimony or facts that are relevant to factors which influence the sale price which would be arrived at in fair market value sale.

*By the Court.*—Judgment affirmed.

CURRIE, C. J., took no part.