RITE-HITE CORPORATION and Michael H. White, Plaintiffs-Appellants,††

v.

BOARD OF REVIEW OF the VILLAGE OF BROWN DEER, Defendant-Respondent.†

Court of Appeals

*No. 96–3178. Submitted on briefs November 4, 1997.—Decided December 9, 1997.*

(Also reported in 575 N.W.2d 721.)

††Petition to cross review denied.
†Petition to review denied.

On behalf of the plaintiffs-appellants, the cause was submitted on the briefs of *Alan Marcuvitz* and *Andrea Roschke* of *Weiss, Berzowski, Brady & Donahue*, of Milwaukee.

On behalf of the defendant-respondent, the cause was submitted on the brief of *Harold H. Fuhrman* of *Harold H. Fuhrman & Associates* of counsel to *Crivello, Carlson, Mentkowski, Steeves, S.C.*, of Milwaukee.

Amicus Curiae brief was filed by *Curtis Witynski*, legal counsel, of Madison, for the League of Wisconsin Municipalities.

Before Wedemeyer, P.J., Fine and Schudson, JJ.

FINE, J.   Rite-Hite Corporation and Michael White appeal a judgment entered by the trial court upholding, on *certiorari*, a determination by the Board of Review of the Village of Brown Deer, sustaining a $4,100,000 assessment for January 1, 1995, of property

owned by White and leased to Rite-Hite. Rite-Hite and White claim that the Board did not value the property in the way required by § 70.32(1), STATS.; that the assessment violates the uniformity clause in Article VIII, § 1 of the Wisconsin Constitution; and that the hearing before the Board violated their due-process rights.[1] We affirm in part, reverse in part, and remand this matter to the Board.

This is an appeal on certiorari. Accordingly, the scope of our review is "strictly limited," and we may consider only:

1.  whether the Board "kept within its jurisdiction";

2.  whether the Board "acted according to law";

3.  whether the action taken by the Board "was arbitrary, oppressive or unreasonable" so as to represent "its will and not its judgment"; and

4.  whether the evidence before the Board was such "that it might reasonably" sustain the assessment.

*State ex rel. N/S Assoc. v. Board of Review*, 164 Wis. 2d 31, 41, 473 N.W.2d 554, 557 (Ct. App. 1991) (quoted source omitted). Although we have been greatly assisted by the trial court's thoughtful and comprehensive written decision, our review is *de novo. See id.*, 164 Wis. 2d at 42, 473 N.W.2d at 557. We discuss the contentions of Rite-Hite and White against this background.

---

[1] An *amicus curia* brief, in connection with this latter point only, has been filed by the League of Wisconsin Municipalities.

Setting the amount of value on which real estate tax will be levied is a two-stage process—appraisal and assessment, *State ex rel. Hensel v. Town of Wilson*, 55 Wis. 2d 101, 105, 197 N.W.2d 794, 795 (1972); *Noah's Ark Family Park v. Board of Review*, 210 Wis. 2d 302, 312, 565 N.W.2d 230, 235 (Ct. App. 1997), *review granted*, 211 Wis. 2d 529, 568 N.W.2d 297 (1997), and is governed by Chapter 70 of the Wisconsin Statutes, § 70.05, STATS.* If the valuation of property and its assessment are made in compliance with the statute, the assessment must be upheld "if there is any evidence to support it." *N/S Assoc.*, 164 Wis. 2d at 42, 473 N.W.2d at 557.

1.   *Valuation*. Real property must be valued in accordance with § 70.32(1), STATS. This statute provides:

> **Real estate, how valued. (1)** Real property shall be valued by the assessor in the manner specified in the Wisconsin property assessment manual provided under s. 73.03 (2a) from actual view or from the best information that the assessor can practicably obtain, at the full value which could ordinarily be obtained therefor at private sale. In determining the value, the assessor shall consider recent arm's-length sales of the property to be assessed if according to professionally acceptable appraisal practices those sales conform to recent arm's-length sales of reasonably comparable property; recent arm's-

* On February 26, 1998, the Wisconsin Supreme Court affirmed the court of appeals's decision in *Noah's Ark* and, as supplemented, adopted that opinion as its own. *Noah's Ark Family Park v. Board of Review of the Village of Lake Delton*, No. 96–1074, slip op. at 3 (Wis. February 26, 1998).

length sales of reasonably comparable property; and all factors that, according to professionally acceptable appraisal practices, affect the value of the property to be assessed.

As used in § 70.32(1), "full value" is the same as "fair-market value." *N/S Assoc.*, 164 Wis. 2d at 44, 473 N.W.2d at 558.

Rite-Hite and White contend that the assessor, and the Board in affirming the assessor's valuation, erred because the assessor used a cost-approach in valuing the property. Rite-Hite and White point out, correctly, that the statute's command that the assessor use "the best information" available encompasses a hierarchy. The best evidence of fair-market value is a recent arm's-length sale of the property. Section 70.32(1), STATS.; *State ex rel. Markarian v. City of Cudahy*, 45 Wis. 2d 683, 686, 173 N.W.2d 627, 629 (1970); *Noah's Ark*, 210 Wis. 2d at 313, 565 N.W.2d at 235. The parties agree that there was no recent arm's-length sale of the property here.

If there is no recent arm's-length sale of the property being assessed, the assessor should, if possible, use "the recent arm's-length sales of reasonably comparable property." Section 70.32(1), STATS.; *Markarian*, 45 Wis. 2d at 686, 173 N.W.2d at 629. If this is not possible, then the assessor may use a cost-approach. *Markarian*, 45 Wis. 2d at 686, 173 N.W.2d at 629.

Both the assessor and an expert hired by Rite-Hite and White testified before the Board. The expert hired by Rite-Hite and White is employed by the accounting firm of Coopers & Lybrand, and concentrates in real-estate valuation. He testified that he located five properties that he believed were comparable to the Rite-Hite property, and, after making various adjust-

ments to account for differences between those properties and the Rite-Hite property, arrived at a fair-market value for the Rite-Hite property of $3,220,000. The assessor, on the other hand, who, at the time of the hearing, had been Brown Deer's assessor for more than thirty-one years, testified that he could find no recent sales of properties that were sufficiently comparable to the Rite-Hite property. Using a cost-approach that accounted for depreciation and obsolescence, he valued the property at $4,848,241.

In its questioning of the expert retained by Rite-Hite and White, and in its discussion of the evidence prior to its vote to uphold the assessment, the Board expressed significant concern whether the five properties identified by that expert were sufficiently comparable to the Rite-Hite property to trigger the statutory mandate to use them in fixing the value of the Rite-Hite property. Moreover, the Board also had significant problems with the expert's experience and credibility, noting that he offered evidence that was inconsistent with what he had given to the Board a year earlier. Under the scope of our review, whether the "comparable" properties identified by Rite-Hite's expert were sufficiently comparable to the Rite-Hite property to be used in arriving at a fair-market value for the Rite-Hite property was the Board 's call. *See Dempze Cranberry Co., Inc. v. Board of Review*, 143 Wis. 2d 879, 887 n.5, 422 N.W.2d 902, 905 n.5 (Ct. App. 1988) (board weighs credibility of witnesses). Further, the Board credited the assessor's cost-approach methodology over that used by the expert hired by Rite-Hite and White. This, too, was the Board's call. *See ibid.*[2]

[2] As a subsidiary issue, Rite-Hite and White argue that the assessor and Board erred in failing to consider an income-capitalization value for the property in conjunction with the cost-

Rite-Hite and White have not demonstrated that the Board's determination was unreasonable or that it represented its will and not its judgment. *See id.*, 143 Wis. 2d at 884, 422 N.W.2d at 904 (assessor's valuation presumed correct).

  2.  *Assessment.* As noted, the levy of real-property taxes requires that the property first be valued and then assessed. Assessment is made "as of the close of January 1 of each year." Section 70.10, STATS.

  Depending on market forces, property values can increase or decrease following an assessment. Thus, in a rising market, for example, property assessed at its full value of $100,000 will have an assessment-to-value ratio of ninety-one percent if the property's value grows to $110,000 before a new assessment can be done. By the same token, if the property's value falls to $90,000 before a new assessment can be done, the assessment-to-value ratio will rise to 111%. In order to keep this assessment-entropy from getting too far out of hand, § 70.05(5)(b), STATS., directs that "[e]ach taxation district shall assess property at full value at least once in every 5-year period."

  According to the assessor's testimony before the Board, market forces skewed the uniformity of assessment ratios in Brown Deer following the last full-value assessment in 1991, when, presumably, all property in

approach. The property, however, is owned by White, who also controls Rite-Hite. The rent that Rite-Hite pays to White is thus not an arm's-length transaction. The assessor testified that he did not use "an income approach" because the property was "a single-use owner-occupied building." The Board acted within the reasonable bounds of its discretion in crediting this testimony and agreeing with the assessor that rental income under these circumstances was not a useful or appropriate measure of the property's value.

the village was assessed at 100% of value. The assessor testified that as a result of these market forces, he assessed residential, commercial, and manufacturing property at eighty-seven percent of their full value for the January 1, 1994, assessment. The Rite-Hite property is commercial property, and it, too, was assessed at eighty-seven percent. The assessor told the Board that he did not do new assessments for January 1, 1995. Rather, he carried over the 1994 assessments. According to the assessor, by January 1, 1995, increasing market values reduced assessment ratios for residential and manufacturing property in the village to eighty percent and eighty-three percent respectively. Commercial property remained at eighty-seven percent.

In assessing the Rite-Hite property for January 1, 1995, the assessor carried over from 1994 the eighty-seven percent commercial-property ratio, and applied it to his value for the property of $4,848,241. This gave him $4,217,970, which he further reduced to $4,100,000, in an attempt to account for what he believed was the disparity between the value of commercial property in Brown Deer, and the increase in values for residential and manufacturing property over what they had been in 1994. The final assessment-to-value ratio for the Rite-Hite property for January 1, 1994, was thus 84.5% ($4,100,000/$4,848,241).

■

Rite-Hite and White complain that the assessment of the Rite-Hite property violates the uniformity clause in Article VIII, § 1 of the Wisconsin Constitution. This clause provides: "The rule of taxation shall be uniform but the legislature may empower cities, villages or towns to collect and return taxes on real estate located

therein by optional methods."[3] Under this provision, "all property within a class" must bear the cost of government "in proportion to its value." *State ex rel. Hensel v. Town of Wilson*, 55 Wis. 2d 101, 106, 197 N.W.2d 794, 796 (1972). This is a rule of reason—absolute equality to the penny or to the hundredth decimal point is not required. *Ibid.* ("all property within a class 'must be taxed on a basis of equality *as far as practicable*' ") (citation omitted) (emphasis added); *see N/S Assoc.*, 164 Wis. 2d at 61–62, 473 N.W.2d at 565–566 (discussing the assessor's uniformity analysis in that case). An assessment that does not comply with the uniformity clause is beyond the Board's jurisdiction and is invalid. *Hensel*, 55 Wis. 2d at 109–110, 197 N.W.2d at 798. Although the legislature has denominated various "classes of property," *see* §§ 70.05(5)(a)1m & 70.32(2), STATS., there is only "one class of real property" for the

[3] Article VIII, Section 1 of the Wisconsin Constitution provides in full:

The rule of taxation shall be uniform but the legislature may empower cities, villages or towns to collect and return taxes on real estate located therein by optional methods. Taxes shall be levied upon such property with such classifications as to forests and minerals including or separate or severed from the land, as the legislature shall prescribe. Taxation of agricultural land and undeveloped land, both as defined by law, need not be uniform with the taxation of each other nor with the taxation of other real property. Taxation of merchants' stock-in-trade, manufacturers' materials and finished products, and livestock need not be uniform with the taxation of real property and other personal property, but the taxation of all such merchants' stock-in-trade, manufacturers' materials and finished products and livestock shall be uniform, except that the legislature may provide that the value thereof shall be determined on an average basis. Taxes may also be imposed on incomes, privileges and occupations, which taxes may be graduated and progressive, and reasonable exemptions may be provided.

purposes of the constitution's uniformity clause, *Gottlieb v. City of Milwaukee*, 33 Wis. 2d 408, 424, 147 N.W.2d 633, 641 (1967); *Noah's Ark*, 210 Wis. 2d at 318–319, 565 N.W.2d at 237–238.[4]

■

The assessor testified that he did not believe that the disparity of assessment ratios among the various statutory classes of property violated the uniformity clause. The Board, too, rejected the argument made by Rite-Hite and White that the uniformity clause required uniformity of taxation among all classes of taxable property, unless, as in the case of agricultural and undeveloped land, exempted from the uniformity clause by the rest of Article VIII, § 1. This was error. *See Noah's Ark*, 210 Wis. 2d at 318–319, 565 N.W.2d at 237–238 (taxation of all statutory classes of property must be uniform). The record before us does not reveal the type of uniformity analysis recommended in 1 PROPERTY ASSESSMENT MANUAL FOR WISCONSIN ASSESSORS, Ch. 14 (Rev. 12/96) and discussed in *N/S Assoc.*, 164 Wis. 2d at 61–62, 473 N.W.2d at 565–566. Accordingly, we cannot determine whether the Rite-Hite property is impermissibly bearing more than its fair share of

---

[4] If Chapter 70, STATS., conflicts with the constitution's uniformity clause, the latter, of course, governs. *See State ex rel. Levine v. Board of Review of the Village of Fox Point*, 191 Wis. 2d 363, 377–378, 528 N.W.2d 424, 429–430 (1995); *Noah's Ark Family Park v. Board of Review of the Village of Lake Delton*, 210 Wis. 2d 302, 323, 565 N.W.2d 230, 239 (Ct. App. 1997), *review granted*, 211 Wis. 2d 529, 568 N.W.2d 297 (1997). Thus, the legislature's recognition of various classes of property, §§ 70.05(5)(a)1m & 70.32(2), STATS., is not dispositive of whether there must be uniformity across the classes identified in Chapter 70.

Brown Deer's tax burden.[5] Stated another way, without a uniformity analysis we cannot determine whether the assessment of the Rite-Hite property at an effective rate of 84.5%, while residential property in the village is assessed, on the average, apparently, at 80% of full value, and manufacturing and personal property is assessed, again, on the average, apparently, at 83% of full value, is beyond the target of "practicable" "equality." *See Hensel*, 55 Wis. 2d at 106, 197 N.W.2d at 796 (Property assessment must be done on a " 'basis of equality as far as practicable.' ") (citation omitted).

■

We may not order that the Board assess property "at any fixed sum." *State ex rel. Levine v. Board of Review*, 191 Wis. 2d 363, 370, 528 N.W.2d 424, 427 (1995). Neither can we make findings of fact; that is the Board's function. Accordingly, we remand this matter to the Board for either: a reassessment of the Rite-Hite property in compliance with Article VIII, § 1 of the Wisconsin Constitution, or a uniformity analysis that demonstrates that the assessment of the Rite-Hite property was done in conformity with that provision. *See N/S Assoc.*, 164 Wis. 2d at 61–62, 473 N.W.2d at 565–566.

3. *Alleged procedural irregularities at the hearing before the Board.* Rite-Hite and White claim that they were denied due process at the hearing before the Board. First, they contend that the assessor should not have been permitted to both ask questions of Rite-Hite's expert witness and make a "closing argument" to the Board. Second, they argue that Brown Deer's law-

[5] Section 70.32(1), STATS., requires that "[r]eal property shall be valued by the assessor in the manner specified in the Wisconsin property assessment manual."

yer should not have represented both the village and the Board at the hearing. We discuss these contentions in turn.

A.   Rite-Hite and White's contention that the assessor cannot ask questions of the witnesses presented by the objecting taxpayer is without merit. Although Rite-Hite and White seek to infer such a limitation from the statutes governing the procedure before a Board of Review, §§ 70.47(8), (11) & 70.48, STATS., none of these statutes either grants or denies the assessor the right to question witnesses. A review of these statutes, however, leads us to conclude that not only are the rights of the objecting taxpayer not infringed by an assessor asking questions or presenting his or her arguments to the Board as to why an assessment should be sustained, but that the goal of the hearing—the ascertainment of a fair assessment—is advanced when the Board has access to all relevant information that is tested by an examination by someone with the technical expertise to ask probing questions.

Although witnesses presenting evidence to a Board of Review give their testimony under oath, § 70.47(8), STATS., and the proceedings are recorded by either a stenographer or a recording device, §·70.47(8)(e), the proceedings themselves are essentially informal. Thus, for example, the Board may call and examine witnesses on its own motion. Section 70.47(8)(c) ("The board may examine under oath such persons as it believes have knowledge of the value" of the property under consideration.). Further, the statutes recognize, as the *amicus* has pointed out, that the assessor may be one of the few persons in the hearing room to have the necessary technical expertise to assist the Board in evaluating the assessment. Thus, the

201

assessor, although not a party to the proceedings in a formal sense, may require the Board to hear witnesses not called by the parties. Section 70.47(8)(d) (The Board "may and upon request of the assessor shall compel the attendance of witnesses" who "may throw light upon the value of the property."). Significantly, the manual published by the Department of Revenue pursuant to its responsibilities under § 73.03(2a), STATS., as a guide to Boards of Review, specifically notes that "[i]t is appropriate for taxpayers [who object to the assessment of their property] to ask the assessor questions and, likewise, for the assessor to ask the taxpayer questions." GUIDE FOR BOARD OF REVIEW MEMBERS 6 (1995).

■ We have read the transcript of the hearing before the Board. The questions asked by the assessor were germane to the issue before the Board and helped the Board understand some of the highly technical testimony presented by Rite-Hite's expert witness. Additionally, the "closing argument" to which Rite-Hite and White refer was the assessor's response to questions asked by Board members. This is specifically permitted by §§ 70.47(8)(c) and 70.48, STATS. Rite-Hite and White were not denied any statutory or due-process rights.

B. Rite-Hite and White also claim that Brown Deer's village attorney should not have advised the Board on procedural matters. In support of this contention, Rite-Hite and White cite authorities for the unremarkable proposition that it is a violation of due process for a "decision maker" to have "previously acted as counsel to any party in the same action or proceeding." *See Guthrie v. Wisconsin Employment Relations Comm'n*, 111 Wis. 2d 447, 460, 331 N.W.2d 331, 337

(1983) (actual bias need not be shown). These authorities are wholly inapposite. First, the village attorney was not a "decision maker" here—the Board was, and the village attorney is not a member of the Board. *See Nu-Roc Nursing Home, Inc. v. Department of Health and Social Services*, 200 Wis. 2d 405, 420, 546 N.W.2d 562, 567–568 (Ct. App. 1996) (advising decision maker does not make advisor a decision maker). Second, Rite-Hite and White have pointed to no instance in the transcript, and we have found none, where the village attorney's advice to the Board was anything other than impartial. Thus, this case is markedly different from *Nova Services, Inc. v. Village of Saukville*, 211 Wis. 2d 690, 565 N.W.2d 284 (Ct. App. 1997), where the village attorney both advocated a position before the village board and advised the board during its closed session. *Id.*, 211 Wis. 2d at 691–695, 565 N.W.2d at 284–286.

Members of Boards of Review are generally lay persons, without legal or technical backgrounds. *See* § 70.46, STATS. Giving the Board access to impartial legal advice on technical and procedural matters advances rather than retards the goal of setting a fair assessment. Thus, the manual published by the Department of Revenue recognizes that the municipal attorney "should act as counsel for the Board of Review," by, among other things, "advising the Board on legal matters." GUIDE FOR BOARD OF REVIEW MEMBERS 5. As with their complaint about the assessor's questions to their expert witness, and their argument about assessor's responses to questions posed by Board members, Rite-Hite and White were not denied any statutory or due-process rights by the village attorney acting as a legal advisor to the Board.

*By the Court.*—Judgment affirmed in part, reversed in part, and cause remanded.