IN RE the TAX ASSESSMENT OF the PROPERTY OF:

Karen M. JOYCE, Petitioner-Appellant,

Thomas F. ANDERSON, James G. Carnitz, Gaylin and Nancy Myran, Sigurd and Sally Olson, Ron and Luanne Prochnow, David and Patricia Reisinger, Frederich and Susan Searing, Stephen and Lyndat Swanson, William Taylor, Richard and Billie Walleen, and Zeithaml Trust, Petitioners,

v.

TOWN OF TAINTER, Respondent-Respondent. [Case No. 99–0324]

IN RE the TAX ASSESSMENT OF the PROPERTY OF:

Karen M. JOYCE, Petitioner-Appellant,

v.

TOWN OF TAINTER, Respondent-Respondent. [Case No. 99–1421]

Court of Appeals

*Nos. 99–0324, 99–1421. Submitted on briefs November 18, 1999.—Decided December 21, 1999.*

## 2000 WI App 15

(Also reported in 606 N.W.2d 284.)

On behalf of the petitioner-appellant, the cause was submitted on the briefs of *John E. Joyce*, Menomonie.

On behalf of the respondent-respondent, the cause was submitted on the briefs of *William R. Lamb* of *Doar, Drill & Skow, S.C.*, Baldwin.

Before Cane, C.J., Hoover, P.J., and Peterson, J.

¶ 1. PETERSON, J. Karen Joyce claims that her property assessments are invalid because the Tainter Town Board (the town board) did not have authority to appoint its assessor, and the Town's board of review (the board) improperly approved her properties' assessments because its assessor did not consider sales of comparable property. On review, the circuit court found no error in the board's decision. We affirm because: (1) the assessor acted as a de facto public officer, even if the assessor was not appointed correctly; and (2) a reasonable view of the evidence before the board indicates that the assessor did consider comparable sales.

¶ 2. The town board appointed Ronald Meyer as its assessor for three-year terms in 1993 and 1996. Joyce objected to her property's 1997 assessment. After a hearing in September of that year, the board of review approved Meyer's assessment and, in December, Joyce sought certiorari review in the circuit court pursuant to § 70.47(13), STATS. In June of 1998, Joyce

352

filed a similar objection to her property's 1998 assessment. After another hearing, the board also approved Meyer's 1998 assessment. Joyce subsequently filed a corresponding petition for review in the circuit court.

¶ 3. The circuit court denied both of Joyce's petitions. The court interpreted the minutes from a September 1976 town meeting as granting authority to the town board to hire an assessor. The court also concluded that Meyer did not make his assessments contrary to law because he considered comparable sales in his valuations. This appeal followed.[1]

*Certiorari Review*

¶ 4. We review the board of review's decision independently from the circuit court's conclusions. *See State ex rel. Brighton Sq. Co. v. City of Madison*, 178 Wis. 2d 577, 584, 504 N.W.2d 436, 439 (Ct. App. 1993). Our review is limited to considering only whether: (1) the board "kept within its jurisdiction"; (2) the board "acted according to law"; (3) the action taken by the board "was arbitrary, oppressive or unreasonable" so as to represent "its will and not its judgment"; and (4) the evidence before the board was such "that it might reasonably" sustain the assessments. *Rite-Hite Corp. v. Board of Review*, 216 Wis. 2d 189, 192, 575 N.W.2d 721, 724 (Ct. App. 1997).

## I. ASSESSOR APPOINTMENT

¶ 5. Joyce first claims that the board of review improperly approved Meyer's assessments because the town board did not have authority to hire an assessor.

---

[1] By order dated June 7, 1999, this court consolidated the two cases.

Therefore, we must review whether the board of review ultimately acted according to law. *See id.* Under the de facto officer doctrine, we conclude that the board appropriately approved Meyer's assessments.[2]

¶ 6. Section 60.10(2)(j), STATS., grants a town meeting power to adopt a resolution authorizing the town board to appoint assessors.[3] Joyce contends that the Town never adopted an appropriate resolution and, therefore, the town board was without power to appoint Meyer. We conclude, however, that Meyer's assessments are entitled legal effect, even if Joyce is correct, because Meyer acted as a de facto officer. *See Gross v. Hoffman,* 227 Wis. 296, 300, 277 N.W. 663, 665 (1938).

■

¶ 7. "As a general rule, all that is required to make an officer de facto is that the individual claiming

---

[2] We may affirm a circuit court's correct decision for different reasons. *See State v. Alles,* 106 Wis. 2d 368, 391, 316 N.W.2d 378, 388 (1982).

[3] Section 60.10, STATS., provides the powers of town meetings. Subsection (2) provides, in relevant part:

DIRECTIVES OR GRANTS OF AUTHORITY TO TOWN BOARD. Except as provided under par. (c), directives or grants of authority to the town board under this subsection may be general and continuing or may be limited as to purpose, effect or duration. A resolution adopted under this subsection shall specify whether the directive or grant is general and continuing or whether it is limited as to purpose, effect or duration. A resolution that is continuing remains in effect until rescinded at a subsequent town meeting by a number of electors equal to or greater than the number of electors who voted for the original resolution. This subsection does not limit any authority otherwise conferred on the town board by law. By resolution, the town meeting may:

. . . .

(j) *Appointed assessors.* Authorize the town board to select assessors by appointment under s. 60.307(2).

the office be in possession of it, performing its duties, and claiming to be such officer under color of an election or appointment." *Pamanet v. State*, 49 Wis. 2d 501, 507 n.11, 182 N.W.2d 459, 464 n.11 (1971) (quoted source omitted). Joyce concedes that Meyer meets the definition of a de facto officer.

¶ 8. Our supreme court has recognized that "the acts of a de facto officer are valid as to the public and third parties and cannot be attacked collaterally." *See Walberg v. State*, 73 Wis. 2d 448, 463–64, 243 N.W.2d 190, 198 (1976). The de facto officer's acts "are binding and valid until the individual is ousted from his office by the judgment of a court in a direct proceeding to try his title to the office."[4] *Id.*; *see also Moses v. Board of Veterans Affairs*, 80 Wis. 2d 411, 418, 259 N.W.2d 102, 105 (1977).

¶ 9. In *Walberg*, two prisoners challenged their convictions on the basis that the court commissioner had no authority to issue their arrest warrants because the commissioner's term had expired at the time the arrest warrants were issued. *See id.* at 452, 243 N.W.2d at 193. The court reasoned that the record clearly indicated the commissioner "was purporting to act as a duly appointed court commissioner" and "[i]t is undis-

---

[4] The appropriate means of challenging a de facto public officer's title is a direct challenge under § 784.04, STATS., which codifies the common law quo warranto action and provides, in relevant part:

(1) An action may be brought . . . in the name of the state . . . against the parties offending in the following cases:

(a) When any person shall usurp, intrude into or unlawfully hold or exercise any public office, civil or military, or any franchise within this state, or any office in a corporation created by the authority of this state . . . .

puted that court commissioners have the authority to issue arrest warrants." *Id.* at 464, 243 N.W.2d at 198. The court concluded that the commissioner's "actions in issuing the arrest warrants were supported by the color of authority attaching to his de facto status as a court commissioner." *Id.* Accordingly, the court rejected the prisoner's collateral attack upon the commissioner's authority.[5]

¶ 10. Joyce claims that the de facto officer doctrine does not apply in this case. She relies on *ABC Realty Corp. v. Bissonnette*, 274 A.2d 694, 696 (Vt. 1971), for the proposition that a taxing authority may not rely on the doctrine to validate taxes against a taxpayer. We are not persuaded by Vermont's exception, however.

¶ 11. No Wisconsin case has recognized a "taxpayer" exception to the de facto officer doctrine. Joyce does not advance any policy reasons that would justify creating an exception to the same doctrine that Wisconsin courts have employed to validate such official acts such as issuing arrest warrants. *See Walberg*, 73 Wis. 2d at 463–64, 243 N.W.2d at 198.

¶ 12. Joyce also contends that she can challenge Meyer's assessment because she is not a member of the public or a third party. She cites *Lincoln St., Inc. v. Town of Springfield*, 615 A.2d 1028, 1031 (Vt. 1992), as support for her contention that she is not a member of the public, and *Uhrig v. Regan*, 623 F.Supp. 968, 971 (D. Md. 1985), as support for her claim that she is not a

---

[5] For examples of other states concluding that a de facto assessor's valuations are valid as to the public and third parties and cannot be attacked collaterally, see *Casamasino v. City of Jersey City*, 730 A.2d 287, 296 (N.J. 1999), *Walker v. Trump*, 549 So. 2d 1098, 1102 (Fla. Dist. Ct. App. 1989) and *People v. O'Neill*, 210 N.E.2d 526, 528 (Ill. 1965).

third party. Neither case discusses these terms in context of the de facto officer doctrine, however. Both cases consider the terms under case-specific statutory schemes where the terms are completely out of context with the considerations here. Further, at least one other state has applied the doctrine to validate assessments. *See Fisher v. Golden Valley Bd. of County Comm'rs*, 226 N.W.2d 636, 640, 642–43 (N.D. 1975) (failure to provide a proper election of assessor or appoint a statutorily qualified assessor, and failure to follow other statutory requirements, did not invalidate assessments because the assessor acted in a de facto capacity).[6]

¶ 13. We conclude that the de facto officer doctrine seeks to avoid precisely the kind of public distraction that would occur in this case if Joyce's challenge were permitted. Joyce concedes that Meyer qualified under the definition of a de facto officer. Accordingly, we conclude that Joyce may not challenge the legality of her property's assessments collaterally, meaning that she may not challenge the assessments by only targeting the legality of Meyer's appointment as the town's assessor. *See Walberg*, 73 Wis. 2d at 464, 243 N.W.2d at 198.

---

[6] We note that the de facto officer doctrine may be inapplicable where an official seeks to apply it for personal benefit. *See, e.g., Reynolds v. Smith*, 22 Wis. 2d 516, 522, 126 N.W.2d 215, 218 (1964) ("the general rule seems to be that a de facto officer cannot maintain an action to recover the salary of the office"). Where, as here, there is no question of personal interest, the body whose act is in issue may invoke the doctrine.

## II. COMPARABLE SALES

¶ 14. Joyce also claims that Meyer failed to consider sales of comparable property in assessing her property. At the board of review hearing on her 1998 assessment, Joyce explained that she was "not offering any appraisal testimony or evidence because . . . the method of assessment is so flawed as to be void under the statute." The board disagreed and concluded that no evidence indicated that Meyer's assessments were erroneous. The circuit court affirmed stating that it would not upset the board's decision absent evidence that the assessed value was erroneous.

¶ 15. Again, we review the board of review's decision independent of the circuit court's conclusions. *See Brighton Sq.*, 178 Wis. 2d at 584, 504 N.W.2d at 439. Joyce does not specifically challenge the value assessed to her property as being unreasonable. Rather, she argues that Meyer assessed her property using a method not in accordance with statutory requirements. We therefore review the board's decision to determine whether it "acted according to law." *See Rite-Hite*, 216 Wis. 2d at 192, 575 N.W.2d at 724.

■

¶ 16. The supreme court has instructed that failure to make an assessment on the statutory basis is a clear error of law that courts must correct. *See State ex rel. Garton Toy Co. v. Town of Mosel*, 32 Wis. 2d 253, 257–58, 145 N.W.2d 129, 132 (1966). Section 70.32(1), STATS., provides, in relevant part:

> Real property shall be valued by the assessor in the manner specified in the Wisconsin property assessment manual . . . from actual view or from the best information that the assessor can practicably obtain, at the full value which could ordinarily be

358

obtained therefor at private sale. In determining the value, the assessor shall consider recent arm's-length sales of the property to be assessed if according to professionally acceptable appraisal practices those sales conform to recent arm's-length sales of reasonably comparable property; recent arm's-length sales of reasonably comparable property; and all factors that, according to professionally acceptable appraisal practices, affect the value of the property to be assessed.

¶ 17. For real property assessments, "full value" means fair market value. *See Steenberg v. Town of Oakfield*, 167 Wis. 2d 566, 572, 482 N.W.2d 326, 328 (1992). Fair market value is best determined by a sale of the property or a comparable property. *See State ex rel. Markarian v. City of Cudahy*, 45 Wis. 2d 683, 686, 173 N.W.2d 627, 629 (1970), *see also* 1 *Property Assessment Manual for Wis. Assessors*, 7–3 (1999). Although the preferred method of property valuation, a direct sales comparison is not always available. In those instances, the factors to be considered include "costs, depreciation, replacement value, income, industrial conditions, location and occupancy, sales of like property, book value, amount of insurance carried, value asserted in a prospectus, and appraisals procured by the owner." *Rosen v. City of Milwaukee*, 72 Wis. 2d 653, 663, 242 N.W.2d 681, 684 (1976).

¶ 18. According to *Garton Toy*, we must review Joyce's challenge to Meyer's method of evaluation even though she does not claim the value he assigned to her property was unreasonable. *See id.* at 257–58, 145 N.W.2d at 133. That court also explained that the usual course of review involves:

whether the undisputed evidence submitted by the taxpayer was such as to show the assessment objected to was not based on sale value as fixed by the statute. If so the assessment has been set aside. Where the evidence so produced was controverted,—if in any reasonable view the evidence as a whole would support the assessment,—the assessment has been upheld. Also, if the record before the court showed that the assessor or the board excluded from consideration evidence entitled to consideration or if the assessor based his valuation on improper considerations or went upon a false assumption or theory in determining the amount, or gave to facts considered unwarranted effect or drew from them unwarranted conclusions the assessment has been set aside.

*Id.* at 258, 145 N.W.2d at 132–33 (quoted source omitted).

¶ 19. Joyce argues that Meyer considered improper formulas and made improper calculations when making his assessments. She claims that he only used comparable sales "as a factor to make market adjustments, or to set boundaries between neighborhoods." Joyce discusses what she terms "a detailed explanation of [Meyer's] assessment philosophy." As evidence of Meyer's "assessment philosophy," she cites several excerpts of his testimony, in which he explained that he considers: similarities in property, size and location of the lot, cost, depreciation and obsolescence, zoning restrictions, neighborhood conditions, sales studies and equalization forms from the Department of Revenue, assessment sales ratio analysis, and opinions on the local market from local realtors. From this she argues that "Meyer takes into consideration virtually every factor available to him other than the

arm's-length sales of properties reasonable [sic] comparable to the property being assessed."

¶ 20. We conclude, however, that these factors are relevant to conducting an appropriate sales comparison analysis using the "Wisconsin property assessment manual," as is required by § 70.32(1), STATS. Discussing Wisconsin's requirement that assessors use the comparable sales analysis, 1 *Property Assessment Manual*, 7–12, 7–13, states:

> Comparable sales refer to properties that represent the subject property in age, condition, use, type of construction, location, number of stories, and physical features. The more similar the sold property is to the subject, the more valid is the sale price as an indicator of the value of the subject property. Also, by using similar properties, *sales prices need fewer adjustments* to arrive at an estimate of value for the subject property. (Emphasis added.)

The inherent implication is that even sales prices of similar properties need some adjustments in order to arrive at an estimate of value for a different property.

¶ 21. The manual continues by instructing assessors to consider different sources of comparable sales data. "The Real Estate Transfer Return contains the main source of sales data for the assessor. . . . The assessor should realize other sources exist about asking and offering prices as well as sales information such as from real estate brokers, appraisers, lenders, newspapers, and multiple listing services." *Id*. at 7–13. This instruction indicates that an appraiser should consider a variety of information when gathering comparable sales information.

¶ 22. The manual warns that, when collecting sales data, it is important that the assessor also ana-

lyze the sales so that only arm's-length transactions are used. *See id.* Then, the manual instructs assessors to consider the elements of comparison and the adjustment process that goes into actually arriving at a value for each unique property.

> In deciding what elements should be used for comparison and the adjustments to be made for those elements, the assessor should look to the actions of the market-place. The items that the assessor uses for comparison should be the same ones that buyers consider when purchasing a property. The elements of comparison can differ depending on property type. All adjustments made are based on the principle of contribution. That is, how much more or less a purchaser would typically pay for a property with or without a certain feature.

*Id.*

¶ 23. Applying the adjustment procedure to the comparable sales, the manual explains, is the last step in the use of the sales comparison approach and is necessary to arrive at an appropriate value. *Id.* at 7–14. "It is in this step that the assessor puts together all of the *market information* that has been gathered and applies it to the subject property to arrive at a value estimate." *Id.* (emphasis added).

¶ 24. It is clear from these excerpts of the Wisconsin property assessment manual that assessors should consider many market factors from a variety of sources when gathering and applying comparable sales information. Here, a reasonable view of the evidence supports Meyer's assessments. *See Garton Toy*, 32 Wis. 2d at 258, 145 N.W.2d at 132–33. Besides the explanation of the various factors he may consider in assessing any given property, Meyer testified before the board of review that his assessments of Joyce's property were

supported by an actual sale in 1995 of a comparable property and by assessments of other comparable properties. Meyer testified that although the 1995 sale supported his valuation, he would not specifically use the 1995 sale for a current assessment of Joyce's property because "it's a little outdated." He also explained:

> You're not always going to have a sale for a specific property. Things that you would use, again, if subject property is sold, that's something that we would use. If there was a home that was similar to his, we would use that in our formulas. We do not take a specific home and use that for a specific assessment. What we do is do a sales analysis of similar to what the state has done, where the sales area on a high/low basis and you're going to come in between that. Throw some high sales out, throw some low sales out, come up with kind of an average of the type of market, so we're going to use a lot of different things in assessment.

> If we had a comparable sale on his home, we would use that in determining our prices. If we had a sale subsequent, we'd use that. For most of the time we're going to have similar properties with similar things that we're going to assess.

¶ 25. A reasonable view of this testimony indicates that Meyer considered comparable sales in the manner specified by the "Wisconsin property assessment manual [and] from the best information that [Meyer could] practicably obtain." Section 70.32(1), STATS. Joyce did not present any evidence that Meyer failed to consider any particular comparable sale or that the value he assigned to her property was otherwise erroneous. Accordingly, we are satisfied that Meyer's valuation included consideration of the best

information available as required by § 70.32(1), STATS., and *Markarian*, 45 Wis. 2d at 686, 173 N.W.2d at 629.

*By the Court.*—Orders affirmed. No costs to either party on appeal.