Charles H. Johnson,
Plaintiff-Appellant,

v.

City of Greenfield Board of Review,
Defendant-Respondent.

Court of Appeals

*No. 2004AP2209. Submitted on briefs May 4, 2005.
—Decided June 7, 2005.*

2005 WI App 156

(Also reported in 702 N.W.2d 460.)

On behalf of the plaintiff-appellant, the cause was submitted on the briefs of *Charles H. Johnson*, of De Pere.

On behalf of the defendant-respondent, the cause was submitted on the brief of *Roger C. Pyzyk*, City Attorney for Greenfield, of West Allis.

Before Wedemeyer, P.J., Fine and Kessler, JJ.

¶ 1. FINE, J.    Charles H. Johnson, an attorney licensed to practice law in this state, appeals, *in pro. per.*, from an order affirming his certiorari challenge to a property-tax assessment by the City of Greenfield Board of Review. Johnson claims that the assessment did not comply with Wis. Stat. § 70.32(1) and the Wisconsin Property Assessment Manual because there is no evidence of how the assessor valued the property. We agree and reverse and remand to the Board with directions to reassess the property pursuant to § 70.32(1) and the Assessment Manual.

## I.

¶ 2.    Charles H. Johnson co-owned a condominium in the Woodbridge Village condominium development.[1] On July 1, 2003, Johnson received a "Notice of Assess-

---

[1] Johnson and two of his sisters inherited the condominium from their mother.

ment" from the City of Greenfield informing him that the "estimated . . . full . . . market value" of the condominium on January 1, 2003 was $112,400. Johnson filed an objection, claiming that the full market value of $112,400 was inaccurate because the assessor did not take into account the property's condition.

¶ 3. The City of Greenfield Board of Review held a hearing on Johnson's objection. At the hearing, Johnson contended that the valuation was incorrect because the assessor did not consider several cracked cinder blocks in the condominium's basement. When the Board asked Johnson about the cinder blocks, he admitted that the condominium association was responsible for the cost of fixing the cracks, but claimed that this was irrelevant to the January 1, 2003 assessment. Johnson also claimed that the valuation was inaccurate because it was not based on sales of comparable property. He pointed out that while several condominia in the development had been improved, his was not, and that there was no evidence that the assessor had made the appropriate adjustments for this.

¶ 4. David Krolicki, a City of Greenfield assessor, presented the Board with what he claimed were the sales of three "similar" condominium units: (1) a Woodbridge Village condominium sold in October of 2002 for $133,000; (2) a Woodbridge Village condominium sold in October of 2002 for $122,300; and a La Casa Real condominium sold in July of 2003 for $138,500. Krolicki told the Board, however, that these sales "were not used to set the value. They're just used as supports and the subject property is assessed at $112,400." He further admitted that:

> without question there are some that have had updating, you know, kitchen, bath, the use of new cabinets and tiles and things [in the other units], without

question. This [Johnson's unit] is not one of 'em and again, I'm just, I just want to reiterate that, you know, the sales that you have before you probably, most likely do have these updates included with them, but, again, these values are just, these sales are used to support and not to set the . . . value on the subject.

Krolicki also told the Board that, after he discussed the condition of the condominium with Johnson at an open-book conference, he reviewed a property record card. He claimed that, according to the card, he had inspected the condominium in May of 1996 and that the inspection did not reveal "anything that would be a detriment to value." The Board affirmed the assessment.

## II.

¶ 5.    We review the Board of Review's decision *de novo. See Joyce v. Town of Tainter*, 2000 WI App 15, ¶ 4, 232 Wis. 2d 349, 353, 606 N.W.2d 284, 286 (Ct. App. 1999). Our review is limited to whether:    (1) the Board kept within its jurisdiction; (2) the Board acted according to law; (3) the action taken by the Board was arbitrary, oppressive, or unreasonable so as to represent its will and not its judgment; and (4) the evidence before the Board was such that it might reasonably sustain the assessment. *State ex rel. N/S Assocs. v. Board of Review of the Vill. of Greendale*, 164 Wis. 2d 31, 41, 473 N.W.2d 554, 557 (Ct. App. 1991).

¶ 6.    Here, our inquiry is whether the assessment was made in accordance with the pertinent statutory directives. *See State ex rel. Geipel v. City of Milwaukee*, 68 Wis. 2d 726, 732, 229 N.W.2d 585, 588 (1975). If the

assessment complies with the statute, we must uphold the assessment "if there is any evidence to support it." *Ibid.* We do not, however, assess the property's value. *Nankin v. Village of Shorewood*, 2001 WI 92, ¶ 21, 245 Wis. 2d 86, 102, 630 N.W.2d 141, 148. Rather, if we find any error that renders the assessment void, we must set it aside and remand to the Board for further proceedings. *Ibid.*

■

¶ 7.    Real property assessment in Wisconsin is governed by Wis. Stat. § 70.32(1) and the Wisconsin Property Assessment Manual. Section 70.32(1) provides:

> Real property shall be valued by the assessor in the manner specified in the Wisconsin property assessment manual provided under s. 73.03 (2a) from actual view or from the best information that the assessor can practicably obtain, at the full value which could ordinarily be obtained therefore at private sale. In determining the value, the assessor shall consider recent arm's-length sales of the property to be assessed if according to professionally acceptable appraisal practices those sales conform to recent arm's-length sales of reasonably comparable property; recent arm's-length sales of reasonably comparable property; and all factors that, according to professionally acceptable appraisal practices, affect the value of the property to be assessed.

As used in § 70.32(1), "full value" is the same as "fair market value." *Joyce*, 2000 WI App 15, ¶ 17, 232 Wis. 2d at 359, 606 N.W.2d at 289. The best evidence of fair-market value is a recent arm's-length sale of the property or a reasonably comparable property.[2] *Ibid.*;

---

[2] There are three methods of valuing property: the sales comparison approach, the cost approach, and the income approach. 1 PROPERTY ASSESSMENT MANUAL FOR WISCONSIN ASSESSORS 7–15 (2003).-

*see also* 1 PROPERTY ASSESSMENT MANUAL FOR WISCONSIN ASSESSORS 7–15 (2003). In this case, there was no recent arm's-length sale of Johnson's unit. We thus look at reasonably comparable sales.

¶ 8.  Reasonably comparable sales:

refer[s] to properties that represent the subject property in age, condition, use, type of construction, location, number of stories, physical features and economic characteristics. The more similar the sold property is to the subject, the more valid is the sale price as an indicator of the value of the subject property. Also, by using similar properties, sale prices need fewer adjustments to arrive at an estimate of value for the subject property.

1 PROPERTY ASSESSMENT MANUAL, at 7–15; *see also Rosen v. City of Milwaukee*, 72 Wis. 2d 653, 665, 242 N.W.2d 681, 686 (1976) (considerations in determining whether property is reasonably comparable). The Assessment Manual advises assessors to collect comparable sales

The sales comparison approach relies on comparing similar properties to the subject and adjusting them for differences. The cost approach relies on determining either the reproduction or replacement cost of the improvements, subtracting all depreciation, then adding the value of the land. The income approach relies on estimating the net rent that the subject property could generate, then capitalizing the rent by an appropriate rate.

*Ibid.* In this case, it appears that the parties looked to the most appropriate method of valuation, comparable sales, because there was no recent arm's-length sale of Johnson's condominium unit. Thus, we do not discuss the other methods of valuation. *See ibid.* ("appraisers typically use the sales comparison approach in markets where adequate sales exist"); *Waste Mgmt. of Wis., Inc. v. Kenosha County Bd. of Review*, 184 Wis. 2d 541, 556–557, 516 N.W.2d 695, 702 (1994) (where evidence of arm's-length sales exist, "it is error for an assessor to look to other information to value the property").

information from a variety of sources, including Real Estate Transfer Returns, real estate brokers, appraisers, lenders, newspapers, and multiple listing services. 1 PROPERTY ASSESSMENT MANUAL, at 7–15 to 7–16; *see also Joyce*, 2000 WI App 15, ¶ 21, 232 Wis. 2d at 361, 606 N.W.2d at 290. After collecting comparable sales information, the Assessment Manual instructs assessors to eliminate sales that are not valid arm's-length transactions, and select reasonably comparable sales for their estimate. 1 PROPERTY ASSESSMENT MANUAL, at 7–16. According to the Assessment Manual, an assessor should then decide what elements to use in comparing the properties and adjusting the value, including:

1. Real property rights conveyed

2. Financing terms

3. Time (market conditions)

4. Location

5. Physical characteristics (e.g. size, construction quality, and condition)

6. Economic characteristics (e.g. operating expenses, lease terms, management, and tenant mix).

*Ibid.* The Assessment Manual provides that the last step is to "apply[] the adjustment procedure to the comparable sales. . . . It is in this step that the assessor puts together all of the market information that has been gathered and applies it to the subject property to arrive at a value estimate." 1 PROPERTY ASSESSMENT MANUAL, at 7–17.

■

¶ 9.  Here, the assessor admitted that he did not use reasonably comparable sales to determine the value of Johnson's condominium unit, and that his last "ac-

tual view" of Johnson's unit was in 1996. This does not comport with Wɪs. Stᴀᴛ. § 70.32(1). Additionally, there is no evidence that either he or the Board used any permissible method to assess Johnson's unit. Accordingly, we reverse and remand this case to the Board for a reassessment of the condominium in compliance with the statute and the Wisconsin Property Assessment Manual. *See Nankin,* 2001 WI 92, ¶ 21, 245 Wis. 2d at 102, 630 N.W.2d at 148.[3]

*By the Court.*—Order reversed and cause remanded with directions.

---

[3] Johnson's brief also asks for costs. Costs are governed by Wɪs. Stᴀᴛ. Rᴜʟᴇ 809.25, "unless otherwise ordered by the court." § 809.25(1)(a). If Johnson seeks costs beyond those permitted as a matter of course, he should make a motion on notice to the Board, together with a short supporting memorandum of law.