Shove vs. The City of Manitowoc.

SHOVE vs. THE CITY OF MANITOWOC.

*January 11 — January 30, 1883.*

TAXATION: Powers of board of review: *(1) Increase of assessment. (2) Property omitted.*

1. Under chapters 154 and 246, Laws of 1877 (sec. 1061, R. S.), the board of review are authorized to increase or lessen an assessment of property for taxation only upon being "satisfied from the *evidence taken*" that it was too low or too high, and an arbitrary increase in an assessment, without examination of witnesses under oath, is void.

2. The authority given to such board to place upon the tax roll any property they may know to be omitted, refers to tangible property and not to moneys or credits.

APPEAL from the Circuit Court for *Manitowoc* County. The case is thus stated by Mr. Justice CASSODAY:

"This is an action to recover back $359.04, alleged to have been illegally assessed in the year 1877, and illegally exacted and collected from the plaintiff by the defendant, March 1, 1878, with interest from that date. It appears from the evidence that in May, 1877, the plaintiff received from the assessors the usual personal property statement; that he put down in such statement, under the head of valuation by the owner, $2,000; that subsequently the assessor put down, under the head of valuation by the assessor, $5,000, at the request of the plaintiff, and. thereupon he signed and swore to the same before the assessor. Subsequently, and on or

about July 3, 1877, the plaintiff was notified in writing that the board of review proposed to raise the valuation of his personal property to $30,000. It appears from the evidence on the part of the defendant that the plaintiff thereupon appeared before the board and denied their power to assess him as they had done, changing it from the assessment made by the assessor, without showing evidence upon which they had assessed him, but refused to be sworn; that the board thereupon, being satisfied from statements made to them by citizens that the valuation was too low on the assessment roll and that the proper amount had been left off by mistake or otherwise, ordered that the assessor enter upon the roll the amount of $15,000, which he did.

"The court found, in effect, that such action increasing the assessment from $5,000 to $15,000 was taken arbitrarily, without the filing of any complaint, and without the taking of any testimony showing that the assessment should be so raised, or that it was too low; that the plaintiff being notified of such raise, and being before the board, was asked if he wished to be sworn, but replied that, in the absence of complaint or evidence in any way disputing his former sworn valuation, there was nothing for him to refute or show; and that such increase was made upon such action, and without any other proceedings; and that the plaintiff thereupon tendered the amount of the tax which he would have been required to pay if his assessment had remained $5,000, but the acceptance thereof was refused, and collection on the whole assessment of $15,000 was enforced, and the excess, or the amount paid on $10,000 of the assessment, to wit, $359.04, was paid on compulsion and under protest, and. hence unjustly taken and converted to the use of the defendant and retained by it, and repayment thereof was refused; and that the same was wholly unauthorized, and hence that the plaintiff was entitled to repayment, with interest from the time of payment, besides the costs and dis-

bursements. Judgment was accordingly entered in favor of the plaintiff and against the defendant, from which this appeal is brought."

*J. S. Anderson,* City Attorney, and *C. E. Estabrook,* of counsel, for the appellant.

For the respondent there was a brief signed by *Wm. H. Seaman,* of counsel, and *J. D. Markham,* as attorney, and the cause was argued orally by *Mr. Markham.*

CASSODAY, J. The facts found by the court seem to be supported by evidence. There can be no question but what the payment of the tax upon the increased assessment was under compulsion and against protest. *Parcher v. Marathon Co.,* 52 Wis., 388. Under ch. 166, Laws of 1871, the board of review were at liberty to increase or diminish the assessor's valuation without hearing witnesses. *McIntyre v. White Creek,* 43 Wis., 620. A similar ruling was made under ch. 78, Laws of 1873, in a case where the property statement was not sworn to. *Lawrence v. Janesville,* 46 Wis., 364. In the case before us the board seems to have had in view ch. 166, Laws of 1871. Since those enactments and those decisions, chapters 154 and 246, Laws of 1877, have been enacted. Sec. 1061, R. S. The plaintiff not having been aggrieved by the assessment made by the assessors, and not having applied to the board for a reduction of the same, was not required to take the initiative and produce testimony showing that the assessment made by the assessors was too high, as required by the two chapters last cited. Ch. 246, Laws of 1877, required the assessors to lay before the board of review their assessment roll of the real property, and all sworn statements made by others, and valuations made by them of personal property and bank stock; and such board was thereupon required, under their official oaths, to carefully review and examine said roll and statements, and all valuations of real or personal property

and bank stock, and correct any errors apparent in the description of property or otherwise, and for that purpose they were thereby required to hear and examine any person or persons *upon oath*, who should appear before them, in relation to the assessment of any property upon said roll, or in relation to any property omitted therein; and required the clerk to reduce such examination to writing and carefully preserve the same on file in his office; and if it appeared that any property had been valued by the assessors too high or too low, they were to increase or lessen the same to the true valuation, according to the rules prescribed.

The chapter further provided that "the clerk shall keep a careful record of all changes made and valuations determined upon by the board of review; provided, further, that the said board of review shall and may, *when satisfied from the evidence taken* that the valuation of any property assessed is too high or too low on the assessment roll, raise or lower the same, as the case may be, whether the person assessed appears before them or not." Thus it appears that the board of review were authorized to increase or lessen the assessment only upon being "satisfied from the evidence taken" that it was too high or too low. It presupposed a hearing and examination of some witness or witnesses upon oath. The evidence was to be reduced to writing by the clerk and carefully preserved on file in his office. The clerk was also to keep a careful record of all changes made and valuations determined upon. From all this it is very apparent that the enactment was for the very purpose of preventing the board from arbitrarily increasing or lessening the amount of the assessment, as they could under previous legislation. It was to prevent such reduction or increase without evidence or testimony and merely to satisfy their own notions of justice or some opinion based, perchance, upon some casual statement made by some citizen in good faith or otherwise. The investigation might have been summary, but the

determination should have been based upon evidence. Such seems to have been the policy and purpose of the act in question, and the wisdom of it was for the legislature and not for the court. It is true, the act provided that the board might also place upon the roll any property that they *knew* to have been left off by mistake or otherwise, and assess the same to the person to whom in right it should have been assessed; but that, we think, refers to some tangible property,— as, for instance, a span of horses,— and not to moneys or credits supposed to have been covered by the assessment in question.

For the reasons given the judgment of the circuit court must be affirmed.

*By the Court.*— Judgment affirmed.