# SUPREME COURT OF WISCONSIN

| | |
|---|---|
| CASE NO.: | 2010AP3015 |
| COMPLETE TITLE: | Frank J. Sausen, |
| | Petitioner-Appellant-Petitioner, |
| | v. |
| | Town of Black Creek Board of Review, |
| | Respondent-Respondent. |

REVIEW OF A DECISION OF THE COURT OF APPEALS
(No cite)

| | |
|---|---|
| OPINION FILED: | February 19, 2014 |
| SUBMITTED ON BRIEFS: | |
| ORAL ARGUMENT: | September 4, 2014 |

SOURCE OF APPEAL:

| | |
|---|---|
| COURT: | Circuit |
| COUNTY: | Outagamie |
| JUDGE: | Michael W. Gage |

JUSTICES:

| | |
|---|---|
| CONCURRED: | PROSSER, J., concurs. (Opinion filed.) |
| | ROGGENSACK, J., concurs. (Opinion filed.) |
| DISSENTED: | |
| NOT PARTICIPATING: | |

ATTORNEYS:

For the petitioner-appellant-petitioner, there were briefs by *R. George Burnett*, *T. Wickham Schmidt*, and *Conway, Olejniczak & Jerry, S.C.*, Green Bay, and oral argument by *R. George Burnett*.

For the respondent-respondent, there was a brief by *Michael C. Menghini* and *Herrling Clark Law Firm Ltd.*, Appleton, and oral argument by *Michael C. Menghini*.

NOTICE

**This opinion is subject to further editing and modification. The final version will appear in the bound volume of the official reports.**

No. 2010AP3015
(L.C. No. 2010CV396)

STATE OF WISCONSIN      :     IN SUPREME COURT

**Frank J. Sausen,**

       **Petitioner-Appellant-Petitioner,**

  **v.**

**Town of Black Creek Board of Review,**

       **Respondent-Respondent.**

**FILED**

**FEB 19, 2014**

Diane M. Fremgen
Clerk of Supreme Court

REVIEW of a decision of the Court of Appeals. *Affirmed.*

¶1    SHIRLEY S. ABRAHAMSON, C.J.   This is a review of an unpublished decision of the court of appeals affirming an order of the circuit court for Outagamie County, Michael W. Gage, Judge.[1]  In a certiorari review, the circuit court affirmed the Town of Black Creek Board of Review's assessment of taxpayer Frank J. Sausen's real property for purposes of real estate

---

[1] Sausen v. Town of Black Creek Bd. of Review, No. 2010AP3015, unpublished slip op. (Wis. Ct. App. Nov. 6, 2012).

taxation.[2] The court of appeals summarily affirmed the order of the circuit court. We affirm the decision of the court of appeals.

¶2 The issue presented is whether the town board of review erred in refusing to lower the assessment of the taxpayer's real property. The town assessor valued the property at $27,500, classified the property as "productive forest land," and assessed the property at $27,500. The taxpayer does not challenge the assessor's valuation of the property. The taxpayer challenges the assessment on the ground that the assessor's classification of the property is erroneous.

¶3 The assessor's classification of the property directly affects the assessment in the present case: Property classified as "productive forest land" under Wis. Stat. § 70.32(2)(a) and (c)2. (2011-12)[3] is assessed at full value; property classified as "undeveloped land" is assessed at 50 percent of its full value.[4] The taxpayer claims that the board should change the

---

[2] Wis. Stat. § 70.47(13) ("Except as provided in this subsection and in ss. 70.85 and 74.37, appeal from the determination of the board of review shall be by an action for certiorari . . . .").

[3] All subsequent references to the Wisconsin Statutes are to the 2011-2012 version unless otherwise noted.

[4] Wis. Stat. § 70.32(4) ("[U]ndeveloped land shall be assessed at 50% of its full value . . . .").

The Wisconsin Property Assessment Manual at 12-2 (rev. eff. 1/09) advises: "After determining the full value of the 'Undeveloped land' in accordance with sec. 70.32(1), state case law, and professionally accepted appraisal practices, the value is reduced by 50% under sec. 70.32(4)."

2

classification of the property to "undeveloped land" under Wis. Stat. § 70.32(2)(c)4. and that the property, properly classified as undeveloped land, should be assessed at $13,750, that is, at 50 percent of the full value of $27,500.

¶4 The taxpayer in the present case appeals a determination of the board of review under Wis. Stat. § 70.47(13), which provides that an "appeal from the determination of the board of review shall be for an action for certiorari . . . ."[5] Accordingly, this court's review of the

---

The Manual is relevant to our discussion because the legislature has instructed that the Manual sets forth "guidelines" and is published by the Department of Revenue to "discuss and illustrate accepted assessment methods, techniques and practices with a view to more nearly uniform and more consistent assessments of property at the local level." Wis. Stat. § 73.03(2a).

The Manual is cited for its persuasive value; it cannot supersede the statute.

[5] A taxpayer may challenge an assessment under other statutes.

Section 70.85 allows a taxpayer to challenge an assessment by filing with the Department of Revenue. "Appeal of a determination of the department of revenue shall be by an action for certiorari in the circuit court . . . ." Wis. Stat. § 70.85(4)(c).

Section 74.37 governs a taxpayer's claim in court to recover a general property tax imposed because the assessment of property was excessive. The court proceeding is not a certiorari review; it is a de novo proceeding. In a Wis. Stat. § 74.37 court proceeding, "the assessor's assessment is presumed correct if the challenging party does not present significant contrary evidence." Bloomer Housing Ltd. P'ship v. City of Bloomer, 2002 WI App 252, ¶11, 257 Wis. 2d 883, 653 N.W.2d 309.

board's determination of the assessment and classification of the property is by certiorari review.

¶5 In certiorari review, this court reviews a decision of the board of review under Wis. Stat. § 70.47(13), not the decisions of the circuit court or court of appeals. This court reviews a decision of the board of review in the same manner as the circuit court and court of appeals, benefiting from their analyses. Waste Mgmt. of Wis., Inc. v. Kenosha Cty. Bd. of Review, 184 Wis. 2d 541, 554, 516 N.W.2d 695 (1994).

¶6 In a certiorari review, the court is confined to determining whether the board's actions were:

(1) within its jurisdiction;

(2) according to law;

(3) arbitrary, oppressive, or unreasonable and represented its will and not its judgment; and

(4) supported by evidence such that the board might reasonably make the order or determination in question.[6]

¶7 The taxpayer's argument in the present case centers on the fourth element of certiorari review, namely that the board's determination to adopt the assessor's classification of the property is not supported by evidence such that the board might reasonably make the determination in question.

---

[6] State ex rel. Stupar River LLC v. Town of Linwood Portage Cnty. Bd. of Review, 2011 WI 82, ¶16, 336 Wis. 2d 562, 800 N.W.2d 468.

4

¶8   The taxpayer argues that he does not have the burden to prove the classification and by extension, the assessment, erroneous; that the board, the circuit court, and the court of appeals imposed that burden of proof on him, erroneously according a presumption of correctness to the assessor's classification of the property; and that the board erroneously concluded that the taxpayer did not carry his burden at the board hearing.   The taxpayer asks the court to remand the matter to the board so that it can determine the correct assessment without imposing on the taxpayer the burden of proving the classification erroneous.

¶9   The statutes do not state whether the taxpayer challenging an assessment (or classification) has the burden of proving at the board hearing that the assessment (or classification) is incorrect.

¶10  Upon considering the general rule of law regarding burden of proof, the statutes, and the case law, we conclude that the taxpayer challenging an assessment and classification has the burden of proving at the board hearing that the assessment and classification of property are erroneous; that the taxpayer did not meet his burden of proof; and that the board's determination to maintain the assessment is supported by a reasonable view of the evidence.   We therefore affirm the decision of the court of appeals.

¶11  The following facts are not in dispute for purposes of this review.   Frank Sausen, the taxpayer, owned a 10-acre plot

of property at W5930 County Road A, parcel number 010064400, in the Town of Black Creek, Outagamie County, Wisconsin. He used the property for occasional hunting. The property has not been used to produce commercial forest products.

¶12 In early November 2009, the taxpayer was notified that the assessment of his property had increased from $11,000 in 2008 to $27,500 in 2009. The increase in assessment in 2009 resulted from an increase in the assessor's valuation of the property, not a change in classification.[7]

¶13 Pursuant to Wis. Stat. § 70.32, the 2009 assessment roll included the assessor's valuation of the property at $27,500 as well as the assessor's classification of the property as "low grade woods."

¶14 According to the Wisconsin Property Assessment Manual, "low grade woods" is a permissible subset of "productive forest land."[8] "Productive forest land" is defined in Wis. Stat.

_____

[7] The assessment notice sent to the taxpayer states that the "reason for change" was "[i]ncrease due to revaluation." Town of Black Creek Board of Review, Notice of Assessment—Frank Sausen, W5930 County Rd A, Black Creek WI 54106 (Nov. 4, 2009). Additionally, the prior assessment of $11,000 is congruent with the prior Town of Black Creek Land Values, which valued low-grade forest at $1,100 per acre. The 2009 Town of Black Creek Land Values valued low-grade forest at $2,750 per acre.

[8] Within the classification of "productive forest land," as provided by Wis. Stat. § 70.32(2)(c)2., the Wisconsin Property Assessment Manual advises assessors to further create subclassifications of productive forest land based on the species, size, volume, and stocking density of trees on the property. See 1 Wisconsin Property Assessment Manual at 12-3 to 12-10 (rev. eff. 1/09).

6

§ 70.32(2)(c)2. as "land that is producing or is capable of producing commercial forest products and is not otherwise classified under this subsection."[9]

¶15 Before we examine the issues of burden of proof and the presumption of the correctness of the assessor's classification of the property, we describe the statutory methodology for creating an assessment for real estate taxation. Wisconsin Stat. § 70.32 establishes a three-part methodology for creating an assessment: First, an assessor assigns the property a "valuation"——a value of the property to be assessed based on the statutory requirements in Wis. Stat. § 70.32 and the Wisconsin Property Assessment Manual.[10] The Wisconsin Property Assessment Manual at 7-7 through 7-8 explains that the legislature has established value standards for different classes of properties. Value may thus be affected by the classification of the property.[11]

---

[9] The Wisconsin Property Assessment Manual notes that "[f]orested areas primarily held for hunting, trapping, or in the operation of game preserves, should be classified as forest unless clearly operated as commercial enterprise or exempt." 1 Wisconsin Property Assessment Manual, 5-45 (rev. eff. 1/09).

[10] "Real property shall be valued by the assessor in the manner specified in the Wisconsin property assessment manual provided under s. 73.03(2a) . . . ." Wis. Stat. § 70.32(1).

[11] For example, the value standard for agricultural land is use value. 1 Wisconsin Property Assessment Manual 7-6 to 7-7 (rev. eff. 1/09).

¶16 Second, "the assessor, having fixed a value," "segregates" the property into a "class" under the statutes.[12] The legislature has established eight classes: residential, commercial, manufacturing, agricultural, undeveloped, agricultural forest, productive forest land, and other. See Wis. Stat. § 70.32(2).

¶17 Third, certain classes, notably agricultural forest land and undeveloped land, are assessed at a percentage of full value. Undeveloped land "shall be assessed at 50% of its full value," with the value determined as set forth in the first step described above. See Wis. Stat. § 70.32(4).

¶18 This case involves a challenge to an assessment, based on a challenge to classification. Although Wis. Stat. § 70.32 sets forth a methodology for determining an assessment and uses the word "assessment" often, the word is not defined. The words "assessment" and "assessed value" are set forth in the glossary of terminology in the Wisconsin Property Assessment Manual to mean "a dollar amount assigned to the taxable property . . . by the assessor for the purpose of taxation." The Manual states that "the levy is applied directly against it [the assessment] to determine the tax due."[13]

¶19 We begin our discussion of whether the taxpayer has the burden of proof regarding the classification of property by

---

[12] Wis. Stat. § 70.32(2)(a).

[13] 1 Wisconsin Property Assessment Manual G-1 (rev. eff. 1/09).

8

enunciating the general rule of law that "a party seeking judicial process to advance his position carries the burden of proof."[14]  A board of review is a quasi-judicial body to which this general rule governing burden of proof applies.[15]  Applying this rule to the present case means the taxpayer has the burden of proof.

¶20 The taxpayer argues that this general rule governing the burden of proof does not apply to him because the statute is silent about the burden of proof and the statutes accord a presumption of correctness only to the assessor's valuation, not to the assessor's classification or assessment.  The taxpayer recognizes, as we do, that the concepts of burden of proof and presumption of correctness are intertwined.  "The concept of a 'presumption' is very familiar in the law, and it is closely related to the concept of a 'burden.'"  Ottman v. Town of Primrose, 2011 WI 18, ¶50, 332 Wis. 2d 3, 796 N.W.2d 411.

¶21 Although our initial impression is that the general rule assigning the challenging party the burden of proof applies in the present case, we examine the statutes and the case law to inform us further.

---

[14] Loeb v. Bd. of Regents, 29 Wis. 2d 159, 164, 138 N.W.2d 227 (1965).

[15] "A Board of Review is a quasi-judicial body that hears evidence to adduce whether an assessor's valuation is correct." Metro. Assocs. v. City of Milwaukee, 2011 WI 20, ¶7, 332 Wis. 2d 85, 796 N.W.2d 717 (2011) (citing Nankin v. Vill. of Shorewood, 2001 WI 92, ¶18, 245 Wis. 2d 86, 630 N.W.2d 141).

¶22 Support for applying this general rule allocating the burden of proof to the taxpayer challenger is found in Wis. Stat. § 70.47(7). The statute places a burden on a taxpayer who objects to a valuation to present evidence to the board in support of the objection. This provision adopts the general rule placing the burden of proof on the taxpayer to put on an affirmative case in his or her favor before the board:

> Wis. Stat. § 70.47(7)(a) Objections to valuations. . . . No person shall be allowed in any action or proceedings to question the amount[16] or valuation of property unless such written objection has been filed and such person in good faith presented evidence to such board in support of such objections and made full disclosure before said board, under oath of all of that person's property liable to assessment in such district and the value thereof (footnote added).

¶23 We acknowledge that the title of Wis. Stat. § 70.47(7)(a) is "Objections to valuations" and that (7)(a) addresses a taxpayer's objection to a valuation. Nevertheless, several subsections of § 70.47(7) refer to and govern challenges to assessments. It is apparent from reading § 70.47(7) in its entirety that the words "valuation" and "assessment" are being used interchangeably in several instances.

¶24 Section 70.47 is a long statute with many subsections. The section is entitled "Board of review proceedings" and addresses board proceedings that involve both objections to the

---

[16] The word "amount" has been interpreted to refer to the amount of property, that is, part or all of the property. Clear Channel Outdoor, Inc. v. City of Milwaukee, 2011 WI App 117, ¶8, 336 Wis. 2d 707, 805 N.W.2d 582.

10

valuation and objections to the assessment. Nothing in § 70.47(7) specifically addresses a board's proceedings when an objection is made to a classification of property. Because an assessment involves a classification as well as a valuation, it makes sense to treat § 70.47(7) as governing a board's proceedings regarding challenges to the valuation, classification, or assessment unless the substance of a provision requires a different approach. There is no apparent reason to treat the taxpayer's burden of proof in a challenge to classification differently from the taxpayer's burden of proof in a challenge to a valuation or an assessment.

¶25 Furthermore, Wis. Stat. § 70.47(8) governing a hearing before the board "in relation to the assessment" informs our decision about the taxpayer's burden of proof on the issue of classification. Section 70.47(8)(b) provides that the taxpayer shall be heard first at the board hearing. The party with the burden of proof ordinarily presents first. Because an assessment is based on the classification, this provision in § 70.47(8) applying to a challenge to an assessment should be read to apply to an objection to a classification.

¶26 In addition, § 70.47(8)(i) explicitly provides that a board shall presume that the assessor's valuation is correct but that the presumption may be rebutted by a sufficient showing by the objector that the valuation is incorrect. Again the statutory language is limited to valuations and is silent about a presumption of correctness regarding the assessor's

11

classification: "The board shall presume that the assessor's valuation is correct. That presumption may be rebutted by a sufficient showing by the objector that the valuation is incorrect." Wis. Stat. § 70.47(8)(i).

¶27 This presumption language was added to Wis. Stat. § 70.47(8)(i) in 1997.[17] Although the presumption language in Wis. Stat. § 70.47(8)(i) limits the presumption of correctness to the assessor's valuation, we must read § 70.47(8)(i) in the context of the contemporaneous amendment adding § 70.47(8)(h) requiring the assessor to "provide to the board specific information about the validity of the valuation . . . and information that the assessor used to determine that valuation." The presumption in § 70.47(8)(i) reinforces the burden of proof imposed in § 70.47(7) on the taxpayer who objects to valuation to show at the board hearing that the valuation is erroneous. Even though the assessor must provide specific information to the board regarding the valuation, the burden of proof to show error in the assessor's valuation remains on the taxpayer.

¶28 Our interpretation of Wis. Stat. § 70.47(7) and (8) to support imposing the burden of proof on the taxpayer challenging the assessment or classification at the board is reinforced by § 70.47(9), which directs the board how and when to correct an assessment. Section 70.47(9) provides that a board shall raise or lower an assessment "if the assessment is too high or too low" and "shall state on the record the correct assessment and

_____

[17] 1997 Wis. Act 237, § 279m.

that that assessment is reasonable in light of all the relevant evidence the board received."  Wis. Stat. § 70.47(9)(a).

¶29 Although Wis. Stat. § 70.47(9)(a) is silent about whether the taxpayer has the burden of proof in challenging the correctness of the classification, Wis. Stat. § 70.47(9)(a) explicitly states that if the vote at the board is a tie vote on the objection to the assessment, the assessment will be sustained.  The legislature has thus declared that if the party who seeks to raise or lower the assessment fails to persuade a majority of the board that the assessment is incorrect, that party loses.  In this way, § 70.47(9)(a) makes it absolutely clear that the burden of persuasion is on the taxpayer to show that an assessor's assessment is erroneous.  Because an assessment depends on a valuation and a classification, it makes sense to apply the same burden of proof to a taxpayer's challenge to a classification as is applied to a taxpayer's challenge to an assessment.

¶30 Finally, our position is supported by Wis. Stat. § 74.37.  Under this statute, when a taxpayer uses this procedure in circuit court to challenge an assessment as excessive, the circuit court reviews the board's determination de novo, giving "no deference to the Board of Review's decision."[18]  Nevertheless, "the underlying assessment still

---

[18] Metro. Assocs. v. City of Milwaukee, 2011 WI 20, ¶10, 332 Wis. 2d 85, 796 N.W.2d 717.

carries a presumption of correctness."[19] When the legislature provides that an underlying assessment carries a presumption of correctness when the board's determination is reviewed de novo by a court, it seems logical to infer that when a more limited certiorari judicial review of a board's determination takes place, the burden is on the taxpayer to prove that an assessor's assessment is erroneous.

¶31 The historical understanding of earlier, similar versions of the statutes bolsters our interpretation of the present statutes as placing the burden of proof on the taxpayer to prove that the assessor's classification is erroneous.

¶32 As far back as 1883, the court declared that under the statutes then in effect a person objecting to an assessment had to take the initiative and produce testimony showing that the assessment was too high. See Shove v. City of Manitowoc, 57 Wis. 5, 7, 8, 14 N.W. 829 (1883). Furthermore, the court noted that the statute provided that a board of review was authorized to increase or lessen the assessment "only upon being 'satisfied from the evidence taken' that it is too high or too low." Shove, 57 Wis. at 8. The Shove court concluded that the statute was enacted to prevent the board from arbitrarily increasing or decreasing an assessment "without evidence or testimony and merely to satisfy their own notions of justice or some opinions based, perchance, upon some casual statement made by some citizen in good faith or otherwise." Shove, 57 Wis. at 8.

---

[19] Id. (citing Wis. Stat. § 70.49(2)).

14

¶33 The Shove case has since been cited for the proposition that, absent sufficient evidence, a board cannot change an assessment.

¶34 State ex rel. Giroux v. Lien, 108 Wis. 316, 317-18, 84 N.W. 422 (1900), cited Shove as supporting the proposition that an assessor's valuation stands before the board as prima facie correct and declared that "the assessment needs no support by evidence in the first instance, but must stand, unless shown to be incorrect by reasonably direct and unambiguous evidence" (emphasis added).

¶35 Subsequently, State ex rel. Foster v. Williams, 123 Wis. 73, 75, 100 N.W. 1052 (1904), cited Giroux for the proposition that an objecting taxpayer "had no right to have [the true assessment] reduced, except upon evidence reasonably tending to show that it was excessive . . . ."[20]

¶36 The court has stated that a landowner must overcome "the prima facie presumption in favor of the original assessment." State ex rel. Vilas v. Wharton, 117 Wis. 558, 562, 94 N.W. 359 (1903) (emphasis added). In State ex rel. Kimberly-Clark Co. v. Williams, 160 Wis. 648, 651, 152 N.W. 450 (1915), the court declared that "[t]he assessment of the relator's

---

[20] Shove v. City of Manitowoc, 57 Wis. 5, 14 N.W. 829 (1883), and State ex rel. Foster v. Williams, 123 Wis. 73, 75, 100 N.W. 105 (1904), involved a tax on personal property, but the principles stated therein are applicable to taxation of real property. Fond du Lac Water Co. v. City of Fond du Lac, 82 Wis. 322, 52 N.W. 439 (1892) (holding that, both as to real and personal property, a board of review cannot arbitrarily increase the valuation of the assessor without proof being furnished).

15

property made by the assessor was prima facie correct and was binding on the board of review in the absence of evidence showing it to be incorrect" (emphasis added). The court has also noted that "it is . . . the law that the assessment made by the local assessor is prima facie correct." Peninsular Power Co. v. Wisconsin Tax Comm'n, 195 Wis. 231, 234, 218 N.W. 371 (1928).

¶37 Thus, on the basis of the general principle regarding which party has the burden of proof; the text of Wis. Stat. §§ 70.47(7)(a), 70.47(8)(i), 70.47(9), and 74.32; and the case law, we conclude that a taxpayer who objects to an assessment on the basis of the classification of the property has the burden of proving that the classification is erroneous.

¶38 We now examine the record before the board to determine whether the board erred in refusing to reduce the assessment. In reviewing a determination of a board of review, "[t]he presumptions are all in favor of the rightful action of the board." Darcel v. Manitowoc Bd. Of Review, 137 Wis. 2d 623, 626, 405 N.W.2d 344 (1987) (quoting State ex rel. Boostrom v. Bd. of Review, 42 Wis. 2d 149, 155, 166 N.W.2d 184 (1969)).[21]

---

[21] In reviewing a municipality's decision on certiorari, Wisconsin courts have repeatedly stated that there is a presumption of correctness and validity to a municipality's decision. Nowell v. City of Wausau, 2013 WI 88, ¶24, 351 Wis. 2d 1, 838 N.W.2d 852.

The person challenging the municipality's decision, here the taxpayer, bears the burden to overcome the presumption of correctness of the board's decision. Ottman v. Town of Primrose, 2011 WI 18, ¶50, 332 Wis. 2d 3, 796 N.W.2d 411.

16

¶39 To support his argument that the board erred in refusing to reduce the assessment and his contention that the classification of the property should be changed from "productive forest land" to "undeveloped land," the taxpayer produced and relied on two maps:  one issued by the Wisconsin Department of Natural Resources (DNR) and the other issued by the United States Department of the Interior Geological Survey. "Undeveloped land" is defined by Wis. Stat. § 70.32(2)(c)4. as "bog, marsh, lowland brush, uncultivated land zoned as shoreland . . . or other nonproductive lands not otherwise classified under this section."

¶40 The DNR map shows an aerial view of the property in question with different shading for different geographical descriptions; the property at issue is described as "forested wetlands."

¶41 On the basis of these maps, the taxpayer argued that the assessor's classification was erroneous and that the maps supported his view that the property's being "marsh," "swamp," or "wetlands" prevented the property from being classified as "productive forest land."  He asserted that the maps more accurately described his property as "undeveloped land" than as "productive forest land."

¶42 The town assessor disputed the taxpayer's assertions at the hearing, claiming that the aerial map showed that the property was "pretty much all trees."  The town assessor stated that both maps described the property as "forested" or "wooded,"

17

supporting the classification of the property as "low-grade woods."

¶43  The burden fell on the taxpayer to show that the board erred and that the property was undeveloped land and not "productive forest land."  The taxpayer failed to submit evidence that the property is not capable of producing commercial forest products or that the property failed to qualify as low-grade woods. The taxpayer relied entirely on the two maps to show that the property was "undeveloped land."  The maps supported none of the taxpayer's contentions.  The maps did not support the taxpayer's contentions that the board erred; that the property was improperly classified as productive forest land; or that the property should be reclassified as undeveloped land.  The Wisconsin Property Assessment Manual notes that an aerial photograph showing the presence of trees can indicate forest classification and the presence of constantly wet soil can indicate undeveloped land classification.[22]  The taxpayer thus furnished no evidence that the assessment was not fixed upon the statutory basis.

¶44  In their discussion, members of the board noted that some of the property was "swampland," but that the property had "a lot of trees on it."  The members of the board concluded that the classification should be maintained as-is.

---

[22] 1 <u>Wisconsin Property Assessment Manual</u> at 11-33 (eff. 1/09).

¶45 The circuit court held that the evidence provided by the taxpayer was insufficient to meet his burden of proof. Rather, the totality of the evidence was such "that it might reasonably sustain the Board's determination." The court of appeals also held that the taxpayer failed to make a record showing that the classification was incorrect.

¶46 On certiorari review, a court does not retry the facts and an assessment must be upheld if it can be supported by any reasonable view of the evidence.[23] This court "will review the evidence only so far as to ascertain if there is reasonable ground for belief that the decision [of the board of review] is the result of honest judgment, in which case it will not be disturbed."[24]

¶47 The taxpayer's argument in the present case centers on the fourth element of certiorari review, namely that the board's determination to adopt the assessor's classification of the property is not supported by evidence such that the board might reasonably make the determination in question. We conclude that the board's determination is supported by a reasonable view of the evidence. The taxpayer here failed to meet his burden to present evidence justifying the board's overturning the assessment. In light of all relevant evidence that the board

---

[23] ABKA Ltd. P'ship v. Bd. of Review, 231 Wis. 2d 328, 335, 603 N.W.2d 217 (1999).

[24] State ex rel. Boostrom v. Bd. of Review, 42 Wis. 2d 149, 155, 166 N.W.2d 184 (1969) (quoting State ex rel. N.C. Foster Lumber Co. v. Williams, 123 Wis. 61, 64, 100 N.W. 1048 (1904)).

received, the board could reasonably conclude that the taxpayer did not demonstrate that the classification was incorrect and that the assessment should be lowered.

¶48 For the reasons set forth, we affirm the decision of the court of appeals.

¶49 *By the Court*.——The decision of the court of appeals is affirmed.

¶50 DAVID T. PROSSER, J. *(concurring).* I join the majority opinion but write separately to provide additional background and analysis for disputes about the classification of real property.

I

¶51 In this case, the taxpayer appeared before the Town of Black Creek Board of Review (the Board). He testified about his position, and he supported his position with "two maps: one issued by the Wisconsin Department of Natural Resources (DNR) and the other issued by the United States Department of the Interior Geological Survey." Majority op., ¶39. When the taxpayer did not prevail before the Board, he filed for certiorari review in the Outagamie County Circuit Court. See Wis. Stat. § 70.47(13). He lost in the circuit court and on appeal.

¶52 When a taxpayer appears before a board of review, the taxpayer should proffer all the evidence available because he will ordinarily be limited to that evidence on certiorari review. If the taxpayer is able to gather additional evidence after the board of review——often with the assistance of an attorney——he should seek de novo review under Wis. Stat. § 74.37. De novo review will not shift the burden of proof from the taxpayer to the board, but it will permit the taxpayer to buttress his case with more and different evidence challenging the correctness of the board's decision, which is normally based on the assessor's determination.

¶53 In this case, the taxpayer did not dispute the assessor's <u>revaluation</u> of his property. Rather, the taxpayer contended that his property was improperly classified.[1]

¶54 In my view, the taxpayer would have been in a stronger position with the board if the assessor had <u>reclassified</u> the property and the resulting reclassification had produced a higher assessment. In that case, the taxpayer could at least point to the classification prior to the change to support his position. Here, it was the taxpayer, not the assessor, who was seeking to reclassify the property. Surely the taxpayer had the burden in these circumstances.

¶55 This court does not know when the taxpayer's property was first classified as "productive forest land" because that evidence was never offered. The record shows that the taxpayer acquired the property in 1977 with a farm, but it does not show how the property was classified over the ensuing decades. The taxpayer did not provide evidence of how his land had changed, if at all, during his ownership.[2] For instance, did he plant trees on the property? Did he ever harvest trees from the property for "commercial forest products"? If he never harvested trees, was his failure to do so (1) because he did not

---

[1] All reviewing courts concluded that he did not meet his burden to accomplish this objective.

[2] The record contains an "Objection Form For Real Property Assessment." The form includes the following question: "Have you improved, remodeled, added to, or changed this property since acquiring it?" The taxpayer answered "No." The question is sufficiently general that it does not really explore whether the taxpayer did anything to the trees on the property.

want to harvest trees; (2) because the trees were of such poor quality that they could not produce "commercial forest products"; or (3) because the law would not allow him to harvest trees from land designated as wetlands? Detailed information on these matters might have helped or hurt the taxpayer's case, but the absence of detailed information did not help his case.

¶56 This justice would have liked to have had a better explanation of "low grade woods" than what was provided and evidence of whether the "low grade woods"──here "low grade cedar"──were capable of producing "commercial forest products." This justice would have liked to have known whether all ten acres of the taxpayer's property were designated "wetlands," as well as when they were so designated and by whom. Finally, this justice would have liked information on whether environmental law prevents the harvesting of trees from officially designated wetlands so that the forested land was not able to produce "commercial forest products." On certiorari review, of course, this court is not able to consider information that was not part of the record of proceedings before the Board.

¶57 In sum, the taxpayer failed to offer sufficient evidence to establish that his property required reclassification. Because the Town of Black Creek (the Town) had classified similar property the same way, the taxpayer was effectively seeking a reclassification that could affect the classification of other property in the Town. The taxpayer should have realized that the Board would be disinclined to

3

adopt the taxpayer's position on anything less than compelling evidence. The taxpayer did not provide such evidence.

II

¶58 Wisconsin Stat. § 70.32(2) establishes the procedure for the classification of property:

> (2) The assessor, having fixed a value, shall enter the same opposite the proper tract or lot in the assessment roll, following the instruction prescribed therein.
>
> (a) The assessor shall segregate into the following classes on the basis of use and set down separately in proper columns the values of the land, exclusive of improvements, and, except for subds. 5., 5m., and 6., the improvements in each class:
>
> 1.   Residential.
> 2.   Commercial.
> 3.   Manufacturing.
> 4.   Agricultural.
> 5.   Undeveloped.
> 5m.  Agricultural forest.
> 6.   Productive forest land.
> 7.   Other.

¶59 Paragraph (c) in Wis. Stat. § 70.32(2) lists definitions of "agricultural forest land," "agricultural land," "other," "productive forest land," "residential," and "undeveloped land."

¶60 For purposes of this case, the definitions of "agricultural forest land," "productive forest land," and "undeveloped land" are relevant:

> 1d. "Agricultural forest land" means land that is producing or is capable of producing commercial forest products, if the land satisfies any of the following conditions:

4

a. It is contiguous to a parcel that has been classified in whole as agricultural land under this subsection, if the contiguous parcel is owned by the same person that owns the land that is producing or is capable of producing commercial forest products. In this subdivision, "contiguous" includes separated only by a road.

b. It is located on a parcel that contains land that is classified as agricultural land in the property tax assessment on January 1, 2004, and on January 1 of the year of assessment.

c. It is located on a parcel at least 50 percent of which, by acreage, was converted to land that is classified as agricultural land in the property tax assessment on January 1, 2005, or thereafter.

. . . .

2. "Productive forest land" means land that is producing or is capable of producing commercial forest products and is not otherwise classified under this subsection.

. . . .

4. "Undeveloped land" means bog, marsh, lowland brush, uncultivated land zoned as shoreland under s. 59.692 and shown as a wetland on a final map under s. 23.32 or other nonproductive lands not otherwise classified under this subsection.

Wis. Stat. § 70.32(2)(c).

¶61 As noted above, the taxpayer did not offer any evidence of how the classification of his property had changed——if it had——since the property was acquired in 1977.

                              III

¶62 Wisconsin did not require assessors to classify property, in the manner described in Wis. Stat. § 70.32(2), until 1931. See § 2, ch. 427, Laws of 1931.

                               5

¶63 There were several reasons for the development of classifications at that time. First, Article VIII, § 1 of the Wisconsin Constitution——the so-called uniformity clause——was amended in 1927. This constitutional provision had read in part, "The rule of taxation shall be uniform, and taxes shall be levied upon such property as the legislature shall prescribe." Wis. Const. art. VIII, § 1 (amended 1927). The 1927 amendment changed this sentence to read, "The rule of taxation shall be uniform, and taxes shall be levied upon such property with such <u>classifications</u> as to forests and minerals, including or separate or severed from the land, as the legislature shall prescribe."[3]

¶64 Second, the legislature followed up the 1927 amendment by creating Chapter 77 of the statutes relating to forest crop lands. Ch. 454, Laws of 1927. The original law permitted the owner of a tract of land that was at least 160 acres to petition

---

[3] Wis. Const. art. VIII, § 1 (amended 1941) (emphasis added). In the 1941 amendment, the language changed slightly but remained largely the same:

> The rule of taxation shall be uniform but the legislature may empower cities, villages or towns to collect and return taxes on real estate located therein by optional methods. Taxes shall be levied upon such property with such classifications as to forests and minerals including or separate or severed from the land, as the legislature shall prescribe.

Wis. Const. art. VIII, § 1.

In 1974 the people approved another constitutional amendment adding the following sentence to Article VIII, § 1: "Taxation of agricultural land and undeveloped land, both as defined by law, need not be uniform with the taxation of each other nor with the taxation of other real property."

the "conservation commission" to designate the land as "forest crop land," "more useful for growing timber and other forest crops than for any other purpose." Wis. Stat. § 77.02(1) (1927). Approval of the petition by the commission subjected the property to certain "forestry" practices as well as substantial tax benefits. See generally Wis. Stat. ch. 77 (1927). The constitutional amendment contemplated that at least some forest land would be classified differently from other land,[4] but it did not require that all forest land be classified differently.

¶65 Third, the legislature was in the midst of giving municipalities extensive planning and zoning authority. See, for example, Wis. Stat. § 59.97 (1929), setting out the "zoning power" of counties, which read in part, "(1) The county board of any county may by ordinance regulate, restrict and determine the areas within which agriculture, forestry and recreation may be conducted, the location of roads, schools, trades and industries, and the location of buildings designed for specified uses . . . ."[5] Zoning and the classification of property for

---

[4] The "Woodland Tax Law," set out in Wis. Stat. § 77.16, was not created until 1953. See § 2, ch. 384, Laws of 1953. The Woodland Tax Law stated that "the owner of any tract of land of less than 40 acres may file with the conservation director an application setting forth a description of the property which he desires to place under the woodland tax law and on which land he will practice forestry." Id. If the conservation director determined that the land was suitable for growing trees of commercial quality, the application would be approved. Id. The woodland would then be taxed at 20 cents per acre, and the owner would be obligated to "promote the growth of trees." Id.

[5] See also chs. 279 and 356, Laws of 1929; ch. 375, Laws of 1927; ch. 388, Laws of 1923.

7

taxation appear to overlap, even if that overlap may not be wholly consistent.

¶66 The 1931 legislature[6] repealed the existing Wis. Stat. § 70.32(2) and replaced it with the following:

> (2) The assessor, having fixed a value, shall enter the same opposite the proper tract or lot in the assessment roll, following the instructions prescribed therein. In cities and villages, he shall segregate into the following classes on the basis of use and set down separately in proper columns the values of the land, exclusive of improvements, and the improvements in each class:
>
> > A.  Residential,
> > B.  Mercantile,
> > C.  Manufacturing,
> > D.  Agricultural.
>
> In towns, he shall segregate into the following classes on the basis of use and set down separately in proper columns the acreage and the value of the parts of land, exclusive of improvements, and the improvements which fall within each class:
>
> > D.  Agricultural,
> > E.  Marsh, cut-over, or waste,
> > F.  Timber,
> > A.  Residential, including also mercantile and manufacturing.

Wis. Stat. § 70.32(2) (1931). The listed classes contained no statutory definitions.

¶67 Wisconsin Stat. § 70.32(2) remained intact until 1959, when the legislature amended § 70.32(2), relating to towns, to include the following classes of property in Wis. Stat. § 70.32(2)(b):

> A.  Residential,

---

[6] Ch. 427, Laws of 1931.

8

  B.  Mercantile,

  C.  Manufacturing,

  D.  Agricultural,

  E.  Marsh, cut-over, or waste,

  F.  Timber.[7]

¶68 Chapter 213, Laws of 1963 changed the listing in § 70.32(2)(b) to read:

  A.  Residential,

  B.  Mercantile,

  C.  Manufacturing,

  D.  Agricultural,

  E.  Swamp, or waste,

  F.1 Productive forest land,

  F.2 Nonproductive forest land.

¶69 Chapter 213 then added paragraph (c) containing several definitions:

> 70.32(2)(c) For the purpose of this subsection "swamp or waste" means bog, marsh, lowland brush or other nonproductive lands not otherwise classified under this subsection; "productive forest land" means land which is producing or is capable of producing commercial forest products and is not otherwise classified under this subsection; "nonproductive forest land" means land which because of soil or site conditions is not producing or is not capable of producing commercial forest products and which is not otherwise classified under this subsection.

§ 2, ch. 213, Laws of 1963.

¶70 In 1981 the legislature deleted "Nonproductive forest land" from § 70.32(2)(b) as well as its definition in (2)(c), so that "Swamp, or waste" and "Productive forest land" were the classifications that remained at the bottom of the list. §§ 1059-60, ch. 20, Laws of 1981. The deletion was not accompanied by any change in the definitions. "Swamp, or waste"

---

[7] § 27, ch. 19, Laws of 1959.

continued to be defined, in part, as "other nonproductive lands not otherwise classified." Id.

¶71 In 1984 the legislature changed the word "mercantile" to "commercial," 1983 Wis. Act 275, § 15(8), explaining in a Note that "'[c]ommercial' is more readily understood and clearly indicates that this classification includes all property devoted to business uses."

¶72 In 1986 the legislature modified the definitions in Wis. Stat. § 70.32(c), especially "Swampland or wasteland," which was defined to mean "bog, marsh, lowland brush, uncultivated land zoned as shoreland under s. 59.971 and shown as a wetland on a final map under s. 23.32 or other nonproductive lands not otherwise classified under this subsection." 1985 Wis. Act 153, § 12 (emphasis added).

¶73 In 1995 the legislature added "other" to the list. 1995 Wis. Act 27, § 3362d. However, "other" was not defined until 2002. 2001 Wis. Act 109, § 156d.

¶74 Finally, 2003 Wis. Act 33 created a new category in the listing, "Agricultural forest land," and it changed "Swampland or wasteland" to "Undeveloped land." See 2003 Wis. Act 33, §§ 1536h-1536i. The legislature created the following definition of "Agricultural forest land":

> "Agricultural forest land" means land that is producing or is capable of producing commercial forest products and is included on a parcel that has been classified in part as agricultural land under this subsection or is contiguous to a parcel that has been classified in whole or in part as agricultural land under this subsection, if the contiguous parcel is owned by the same person that owns the land that is producing or is capable of producing commercial forest

10

products. In this subdivision, "contiguous" includes separated only by a road.

2003 Wis. Act 33, § 1536h.

¶75 The underlined words were vetoed by the governor. However, 2003 Wis. Act 230 was devoted entirely to the definition of "agricultural forest land" and created the definition, quoted above in paragraph 60, that exists today. See Wis. Stat. § 70.32(2)(c)1d.

IV

¶76 In this case, the taxpayer had the burden of proving that his ten acres were not properly classified as "productive forest land." The obvious argument to be made was that even though the taxpayer's ten acres were forested, his land was not producing and was not capable of producing commercial forest products. If the taxpayer had succeeded with this argument, he could then have argued that his land was "undeveloped land," defined in part as "other nonproductive lands not otherwise classified under this subsection." See Wis. Stat. § 70.32(2)(c)4.

¶77 If the taxpayer had made the argument above but not succeeded with it, he could have explored whether the land qualified as "agricultural forest land" under Wis. Stat. § 70.32(2)(a)5m., as defined in § 70.32(2)(c)1d., because

11

"agricultural forest land" includes land capable of producing commercial forest products.[8]

¶78 The fact that the taxpayer's land was designated as wetlands did not necessarily mean that it met the definition for undeveloped land, which is "uncultivated land zoned as shoreland under 59.692 and shown as wetland on a final map under s. 23.32." Wis. Stat. § 70.32 (2)(c)4. (emphasis added). The land would have to be "bog, marsh, lowland brush . . . or other nonproductive land not otherwise classified under this subsection" to be classified as "Undeveloped land." Id. (emphasis added). The land would have been "otherwise classified" if the land were "capable of producing commercial forest products."

¶79 Forest land "capable of producing commercial forest products" will likely be classified as either "agricultural forest land" or "productive forest land." However, if environmental law somehow prevents the trees from ever being harvested so that the land is not actually "capable of producing commercial forest products," it would seem that the "productive forest land" or "agricultural forest land" classifications would be improper. The latter point poses an unanswered statutory interpretation question.

---

[8] Although the record is unclear as to the precise nature of the taxpayer's total property, the "Objection Form For Real Property Assessment" indicates that the parcel at issue was purchased with a farm and that the parcel is "land locked." Thus, it is possible that the "farm" was agricultural land, and the taxpayer might have been able to claim that the parcel at issue was "agricultural forest land."

¶80 To sum up, the taxpayer may, in fact, have been entitled to reclassification of his property, but not on the evidence he provided.

¶81 For the foregoing reasons, I respectfully concur.

¶82 PATIENCE DRAKE ROGGENSACK, J. *(concurring).* The majority opinion correctly upholds the Town of Black Creek Board of Review's assessment of Frank Sausen's real property for purposes of real estate taxation. I write in concurrence to complete the certiorari review that applies when a board of review's decision is examined on appeal.

I.  BACKGROUND

¶83 Sausen owns real property in the Town of Black Creek, Outagamie County, Wisconsin. He filed an objection to the assessment of his property with the Town's board of review when his assessment increased from $11,000 in 2008 to $27,500 in 2009. He claimed that his property had been incorrectly classified as "productive forest land." He asserted that the correct property classification was "undeveloped land," as defined in Wis. Stat. § 70.32(2)(c)4., which would then be assessed at 50 percent of its value pursuant to § 70.32(4). The board of review denied his request to reclassify his property, thereby affirming the $27,500 valuation for his assessment.

¶84 Pursuant to Wis. Stat. § 70.47(13), Sausen petitioned for a writ of certiorari in regard to the board of review's classification of his property as "productive forest land."[1]

---

[1] If he had paid the taxes assessed, Sausen could have appealed the assessment pursuant to Wis. Stat. § 74.37(3)(d) wherein he would have commenced an independent action in circuit court subsequent to the board of review's decision. See Nankin v. Vill. of Shorewood, 2001 WI 92, ¶3, 245 Wis. 2d 86, 630 N.W.2d 141 (explaining that with real property located outside Milwaukee County, a property owner could employ § 74.37(3)(d) to recover taxes paid on an excessive assessment).

Upon certiorari review, the circuit court affirmed the board of review. The court of appeals affirmed as well.[2]

## II. DISCUSSION

### A. Standard of Review

¶85 Petitions under Wis. Stat. § 70.47(13) proceed by certiorari review, wherein we independently review the board of review's decision while benefitting from the analyses of the circuit court and court of appeals. State ex rel. Stupar River LLC v. Town of Linwood Portage Cnty. Bd. of Review, 2011 WI 82, ¶16, 336 Wis. 2d 562, 800 N.W.2d 468. We look for "any error in the proceedings of the board which renders the assessment or the proceedings void." § 70.47(13); Northland Whitehall Apartments Ltd. P'ship v. City of Whitehall Bd. of Review, 2006 WI App 60, ¶13, 290 Wis. 2d 488, 713 N.W.2d 646.

### B. Certiorari Review

¶86 The scope of certiorari review under Wis. Stat. § 70.47(13) is limited to considering whether the board of review's actions were: (1) within its jurisdiction; (2) according to law; (3) arbitrary, oppressive or unreasonable and represented its will, not its judgment; and (4) supported by evidence such that the board might reasonably make the determination under review. Joyce v. Town of Tainter, 232 Wis. 2d 349, 353, 606 N.W.2d 284 (Ct. App. 1999). "Certiorari review under [] § 70.47(13) is limited to [] the record made

---

[2] Sausen v. Town of Black Creek Bd. of Review, No. 2010AP3015, unpublished slip op. (Wis. Ct. App. Nov. 6, 2012).

before the board of review."[3]  Nankin v. Vill. of Shorewood, 2001 WI 92, ¶20, 245 Wis. 2d 86, 630 N.W.2d 141.

¶87  I note that the board of review had jurisdiction to hear Sausen's objection to the classification of his property. The classification of real property bears on the amount of the property's assessment.  Wis. Stat. § 70.32(4).  The board of review has statutory authority to review and evaluate the assessor's decision and other evidence submitted to it when an objection is made.  Wis. Stat. § 70.47(7).  Accordingly, the decision of the board of review was within its jurisdiction. See Anic v. Bd. of Review of the Town of Wilson, 2008 WI App 71, ¶19, 311 Wis. 2d 701, 751 N.W.2d 870 (explaining that the board of review kept within its jurisdiction when it determined the "probity and credibility of the witnesses").

¶88  In order for the board of review's decision to be made according to law, the board's denial of Sausen's objections to the assessment of his property would have involved consideration of whether appropriate statutory criteria were followed in arriving at the assessment.  Johnson v. City of Greenfield Bd. of Review, 2005 WI App 156, ¶6, 284 Wis. 2d 805, 702 N.W.2d 460. The assessment includes the valuation of the real estate, as well as its classification.  Wis. Stat. § 70.32.  Valuation is governed by § 70.32(1), (1g) and (1m).  Section § 70.32(1) is

---

[3] Under Wis. Stat. § 74.37(3)(d), the action proceeds as do other civil actions.  Nankin, 245 Wis. 2d 86, ¶22.  Such an action permits a full trial on the assessment, unlike the limited review accorded in certiorari review.  Id., ¶24.

most relevant to the assessment of Sausen's property. It provides that valuation shall proceed:

> in the manner specified in the Wisconsin property assessment manual provided under s. 73.03(2a) from actual view or from the best information that the assessor can practicably obtain, at the full value which could ordinarily be obtained therefor at private sale. In determining the value, the assessor shall consider recent arm's-length sales of the property to be assessed if according to professionally acceptable appraisal practices those sales conform to recent arm's—length sales of reasonably comparable property; . . . and all factors that, according to professionally acceptable appraisal practices, affect the value of the property to be assessed.

¶89 The board of review considered recent arm's—length sales of other property that were reasonably comparable to Sausen's property. The board noted, "We have wood swampland that was sold in the township parcel number 260 that was sold for $2,750 per acre and also section 13 parcel 249 was also sold for $2,750, they are very similar, similar type of woods on the map."

¶90 Sausen's parcel contained ten acres. With a per acre value of $2,750, the assessed value of $27,500 is consistent with other comparable property that had a recent sale.

¶91 The board of review also considered Sausen's argument that the property should be classified as "undeveloped land" and decided that the assessor's description of low grade woods was more appropriate due to all the trees. "Forested areas primarily held for hunting" are generally given a forested classification such as "[p]roductive forest land" described in Wis. Stat. § 70.32(2)(c)2. See Wisconsin Dep't of Revenue,

4

Wisconsin Property Assessment Manual 2013, 5-55 – 5-56 (rev'd 12/11). The board of review then affirmed the classification of "productive forest land" and the valuation of $27,500 given by the assessor. In so doing, the board of review followed the directive of § 70.32(1) and acted "according to law." See Johnson, 284 Wis. 2d 805, ¶6 (explaining that assessments made according the statutory criteria are made according to the law).

¶92 The board of review did not approach Sausen's objection to the classification of his property in an arbitrary, oppressive or unreasonable manner. It excluded no evidence that Sausen sought to present. Rather, it considered the maps that he submitted, his argument that his property should be classified as "undeveloped land," other wooded hunting lands and how they were assessed, and the assessor's professional opinion that the property was correctly classified as "productive forest land" because it contained low grade woods. See Whitecaps Homes, Inc. v. Kenosha Cnty. Bd. of Review, 212 Wis. 2d 714, 722-23, 569 N.W.2d 714 (Ct. App. 1997) (concluding that so long as there is a reasonable ground for the exercise of the board of review's judgment, it will not be held to be arbitrary or oppressive).

¶93 Sausen provided two maps as evidence: one from the Wisconsin Department of Natural Resources (DNR map) and one from the United States Department of the Interior Geological Survey (US Survey map). Both maps are aerial photographs of Sausen's property, and both maps described the property in ways other than as "productive forest land," the classification the

5

assessor assigned to Sausen's property. However, neither map described the land depicted as "undeveloped land." The DNR map described the property as "forested" and "wetlands." The US Survey map does not use descriptive labels for Sausen's property.

¶94 Sausen represented himself before the board of review and argued that the descriptions on the two maps confirmed his belief that his property should have been classified as "undeveloped land." However, Sausen did not provide expert testimony from a real estate appraiser who may have been able to link the descriptions on the maps to the statutory classifications set out in Wis. Stat. § 70.32(2)(a)5. and 6. Sausen did not have the expertise to make the necessary connection. Accordingly, the assessor's opinion that the property was correctly classified as "productive forest land" pursuant to § 70.32(2)(a)6. was uncontroverted before the board of review. Therefore, the evidence was such that the board of review might reasonably make the determination that it made. See Stupar River, 336 Wis. 2d 562, ¶¶25-27 (concluding that the board of review's decision must be upheld if it is reasonable under the evidence submitted).

### III. CONCLUSION

¶95 Certiorari review of the board of review's decision shows that the board: kept within its jurisdiction; acted according to law; was not arbitrary, oppressive or unreasonable in its decision-making; and heard evidence that reasonably supported its decision. Accordingly, I concur with the majority

6

opinion and conclude that the board of review's decision must be upheld.